523 So.2d 661 (1988)
Richard SCHUBOT, Appellant,
v.
Rothe SCHUBOT, Appellee.
No. 87-2273.
District Court of Appeal of Florida, Fourth District.
March 16, 1988.
Rehearing Denied May 4, 1988.
J. Michael Burman of Slawson, Burman & Critton, North Palm Beach, Richard H. Levenstein of Smith & Levenstein, P.A., Boca Raton, and Edna L. Caruso of Edna L. Caruso, P.A., West Palm Beach, for appellant.
Jane Kreusler-Walsh of Klein & Beranek, P.A., and Ronald Sales, West Palm Beach, for appellee.
DOWNEY, Judge.
From an order awarding temporary relief in a domestic relations case, the husband has perfected this non-final appeal.
It appears that the husband and wife, aged 60 and 46 respectively, were married for slightly less than ten years without issue of the marriage. The husband's net worth exceeds thirty million dollars and it is conceded he has the financial ability to meet the wife's needs. An antenuptial agreement provided, among other things, that during any separation prior to a divorce the husband would be required to pay the wife monthly alimony only in accordance with a schedule of payments provided therein for the eventuality of a divorce. In view of the length of the marriage that amount would be $3,000 per month. In her complaint the wife seeks to avoid the antenuptial agreement on the grounds of facial unfairness, failure to make full disclosure, duress and undue influence. Although the husband has been paying the $3,000 per month per the agreement, she sought temporary relief including alimony, attorney's fees, and suit money. After an evidentiary hearing, the trial court awarded the wife $25,000 per month as temporary alimony, $50,000 as temporary attorney's fees, $20,000 for accounting fees, and $10,000 as other miscellaneous suit money.
The wife adduced evidence which showed the amount of time that would be required to prepare the case for trial; that the wife had agreed to pay her counsel $250 per hour; and that employment of both accountants and appraisers would be required to evaluate the business interests *662 of the husband and his various assets including real estate. Predictably, the husband's witnesses testified to more modest time constraints, as well as hourly rates, for trial preparation. However, the trial judge's conclusions fall within those parameters and, thus, are adequately supported by the record both as to the necessity for the nature of the services to be rendered and the value thereof. Furthermore, being an award on account of prospective services, adjustments as are necessary to bring services in line with reality and justice may be considered at final hearing. Therefore, we find no error demonstrated in the awards on account of temporary attorney's fees, accountant's fees, and suit money.
Our study of the briefs and record convinces us that the trial judge abused his discretion in awarding an excessive amount of temporary alimony. In her application therefor the wife presented the trial judge with two scenarios, one in the amount of $32,000 per month tailored to the lifestyle to which she had allegedly become accustomed during the marriage; the other suited to the down-graded lifestyle she was presently enduring. In support of her claim, the wife contended that the parties lived in a lavish style on a forty-acre farm in Loxahatchee, Florida, maintained by full-time landscapers and maintenance crews. They had a full time French chef, maids, armed security patrols, and bodyguards. Furthermore, she had unlimited access to funds and credit cards. Other evidence focusing on the lifestyle of the parties shows that the husband is an agriculturalist engaged in the research and study of exotic birds. On this forty-acre property and in the home thereon he conducts "the only exotic bird health center in the world" in furtherance of the study of bird diseases and medicines for the preservation of exotic birds. Although the home is large and spacious, only a small portion thereof is the residential quarters of the husband and wife; the remainder is utilized for the care, breeding and research involving the exotic birds. The security patrol and bodyguard were employed in conjunction with the exotic bird business to protect against the theft of the birds, rather than the protection of the parties. The record reflects no high-fashion lifestyle involved with parties, entertainment and leisurely travel; rather, it appears the parties' lifestyle during the marriage was one of industry by both parties associated with the bird research business.
The testimony makes it clear that the bird research is the husband's project and that the wife has departed "the farm" and the project. Thus, her alleged needs contain numerous items that clearly appear no longer relevant to her lifestyle: security patrol, bodyguards, and travel related to bird research. There were questioned items included on her affidavit including: her automobile and all related expenses; her medical expenses; income tax due on the temporary alimony; and contributions for the support of her mother. Her auto and its expenses, as well as her medical expenses, are being paid by the husband. The trial court's order provides for the nontaxable aspect of the temporary alimony contained in its order. Finally, the husband's contributions toward the wife's mother were voluntary and do not have to be continued.
One further consideration that may have been overlooked by the trial court is the provision for temporary alimony during separation and prior to divorce as provided in the antenuptial agreement. While such a provision is not binding at this point in the proceedings as to amount, it is a factor to be considered by the trial court in arriving at a reasonable amount of temporary alimony under the circumstances. Belcher v. Belcher, 271 So.2d 7 (Fla. 1972). The record makes it clear and the husband correctly argued that the agreement was one element the trial court was to consider; however, the record is not clear whether the trial court did consider it. A cryptic reference was made by the trial court at the end of the hearing that might be interpreted as recognition of its responsibility to consider the antenuptial agreement as a factor. However, we can not determine whether it did; therefore, we remind the trial court to consider the agreement when it reconsiders this matter on remand.
*663 From our review it appears the temporary alimony award is excessive and should be reconsidered and a more reasonable sum determined to meet the wife's needs commensurate with her real lifestyle during the marriage.
Accordingly, the order appealed from is affirmed in part and reversed in part and remanded for further consideration of the amount of temporary alimony.
HERSEY, C.J., and ANSTEAD, J., concur.