591 So.2d 1006 (1991)
Dwyn Daniels ROBBIE, Appellant,
v.
Joseph Michael ROBBIE, Appellee.
No. 91-1931.
District Court of Appeal of Florida, Fourth District.
December 18, 1991.
*1007 Shelley M. Mitchell, Fort Lauderdale, for appellant.
Alice Elizabeth Warwick of Warwick, Reynolds & Cope, P.A., Coral Gables, for appellee.
FARMER, Judge.
Wife filed a petition for dissolution and included a prayer for temporary alimony, attorneys' fees [suit money] and costs. Financial affidavits from both parties were submitted to the trial court and a hearing was held on May 22, 1991.
The parties have been married for nearly nine years and have no children. Although she has an undergraduate degree in communications and has completed about one and a half years of law school, wife did not work during the marriage. Husband was employed in his family's business through most of the marriage but was removed from his position in July 1990, some seven months before the parties separated, as a result of a shareholder dispute.
While technically unemployed at the time of the hearing, husband owns 9.5% of Miami Sports Corporation, which in turn owns one-half of Robbie Stadium Corporation, one-half of Robbie Concession Corporation, one-half of Robbie Scoreboard Corporation, and 10.5% of The Miami Dolphins, and he also owns 9.5% of Nelson Laboratories. He receives quarterly payments of $22,000 to $33,000 from an insurance trust. In addition, he is to receive $500,000, before taxes, payable over four years by his family in settlement of the shareholder dispute. Hence he has annualized income of nearly $200,000.
In addition to the foregoing, the husband testified that in February 1991 he also received two separate $30,000 shareholder distributions from the Nelson Laboratories and Miami Sports Corporation stock which was given to him by his father before the marriage. According to his testimony, these distributions were the first he had ever received on either stock, and thus were not considered part of his total monthly income of approximately $15,500.
Husband's affidavit claimed monthly expenses of $10,972. His testimony established that the amount was overstated by nearly $2,500, and that part of the remainder reflected a $2,000 monthly set-aside for attorney's fees in this dissolution proceeding. Subtracting the projected legal fees, his actual monthly expenses were about $6,500. In contrast, wife testified that her monthly income is $83, and her monthly expenses are nearly $5,500. She currently lives alone in Santa Monica, California, at a $900,000 home owned by her mother, and would like to cover her mother's $226 monthly mortgage payment.
Counsel for wife testified that she is charging $150 per hour for her representation, and has thus far accumulated $5,195 in total attorneys' fees, $2,700 of which was still unpaid at the time of the hearing. Wife has paid her lawyer $2,500, of which *1008 she borrowed $1,800 from her mother. Her counsel estimated that prospective attorneys' fees would be about $29,500 and that anticipated minimum trial preparation costs would be around $13,300. Wife's expert witness, a board certified marital and family law attorney, testified that these figures were both reasonable and necessary. Husband claimed that the only way he could pay these fees would be to dissipate his non-marital assets. He also admitted to having at least $50,000 in cash on hand, while wife had about $600.
The trial court awarded wife temporary relief of $1,800 per month, plus monthly car payments at $850 and ordered husband to pay her health insurance. The court also awarded interim counsel fees of $3,500 and $2,500 in costs. Wife appeals.
It is, of course, an appellate truism that temporary relief awards are among the areas where trial judges have the broadest discretion, which we are quite loathe to interfere with, save in the most compelling circumstances. As we said not so very long ago: "the trial court has broad discretion in deciding matters of temporary alimony * * * and we will not disturb that discretion in the absence of a showing that no reasonable man would take the view adopted by the trial court." Wolfson v. Wolfson, 455 So.2d 577, 579 (Fla. 4th DCA 1984).
It is not uncommon to find temporary relief awards reversed as excessive. See e.g., Barclay v. Barclay, 554 So.2d 1191 (Fla. 2d DCA 1989) (abuse of discretion to award wife $2,500 per month where husband's gross earnings averaged $5,666 per month and he was obligated to pay $3,278 per month in mortgage payments); Fields v. Fields, 533 So.2d 922 (Fla. 2d DCA 1988) (trial court erred in part when it awarded temporary alimony which exceeded husband's weekly earnings); Schubot v. Schubot, 523 So.2d 661 (Fla. 4th DCA 1988) (trial judge abused discretion in awarding $50,000 in temporary alimony, "an excessive amount" where wife alleged numerous needs which appeared no longer relevant to her lifestyle); Wenzel v. Wenzel, 512 So.2d 275 (Fla. 4th DCA 1987) (abuse of discretion where "the amount of temporary alimony awarded by the trial court not only exceeds the amount requested by the wife but also appears to exceed the standard of living established by the parties during the marriage."); Herr v. Herr, 463 So.2d 447 (Fla. 4th DCA 1985) (court may not authorize temporary alimony awards in excess of party's ability to pay); Clark v. Clark, 155 Fla. 574, 20 So.2d 900 (Fla. 1945) (award of temporary alimony quashed where chancellor was "entirely too generous in his allowances").[1]
We have found only one case, cited also by the wife, involving temporary alimony where an appellate court deemed the amount of the award so insufficient as to amount to an abuse of discretion. In Vickers v. Vickers, 413 So.2d 788 (Fla. 3d DCA 1982), the third district reversed a $215 biweekly temporary alimony and child support award because the trial judge observed that "the only thing I am doing is keeping everybody alive until the final hearing." As Judge Schwartz said,
This just-prevent-them-from-going-to-the-poorhouse -until-the-case-is-over view of the legal principle controlling [temporary] awards, which is directly reflected in the inadequacy of the sums provided, is both widely held and thoroughly wrong.
413 So.2d at 789. Because the record revealed that the husband had already been voluntarily paying $1,600 monthly without order of court, the district court reversed and remanded for the entry of a temporary relief order requiring the husband to pay $1,600 per month. Unlike Vickers, there are no children here, and it hardly appears that the wife is on her way to the poorhouse.
*1009 Wife also relies on Belcher v. Belcher, 271 So.2d 7 (Fla. 1972), where the supreme court held that
the husband must continue to support his wife during coverture by paying generally the same expenses (omitting long range and vacation items) and by paying amounts he had been providing prior to their separation.
271 So.2d at 11. In this case, the evidence establishes without contradiction that husband paid all expenses during coverture.
We find that the trial court abused his discretion in awarding $1,800 per month temporary alimony. Even considering the narrow scope of our review authority for temporary awards, we are unable to tie the amount awarded with any objective facts, historical or current. Wife sought $5,400 monthly, a figure which certainly was supported by the parties' historical standard of living and well within husband's ability to pay. On the other hand, the court award of $1,800 is unrelated to any evidence in the record and is unexplainable by any formulation of the Belcher standard as applied to the evidence. As Judge Schwartz said in Vickers, the award "was thus not based upon a properly-founded exercise of discretion, but upon an error of law" and thus must be set aside for reconsideration by the trial judge.
We are also troubled about the allowance for suit money [fees and costs]. The purpose of section 61.16, Florida Statutes (1989), which authorizes interim awards of suit money, is to ensure that both parties to a dissolution proceeding have similar access to counsel and can thus fight the action on a nearly equal footing. Nichols v. Nichols, 519 So.2d 620 (Fla. 1988). The appropriate inquiry  whether one spouse has a need for suit money and the other has the ability to pay  is the same whether the fees requested are temporary or final. 519 So.2d at 622.
In this case, wife asked for $29,475 in fees. Her attorney testified that $5,195 had been billed already, with over $2,700 of that billing still owed. Even more stark is the husband's own implicit concession that he is budgeting a personal litigation fund of not less than $2,000 per month  with the passage of time, a sum now approaching $20,000. Yet the judge awarded only $3,500 in fees, which  if it is to be the only interim allowance  effectively leaves her with less than $800 to prepare for trial and for trial itself. Comparing the husband's monthly income of well over $15,000 with his wife's monthly income of $83, we do not see how this particular allowance comes even close to equalizing the parties' access to legal services. See Fitterman v. Fitterman, 502 So.2d 8 (Fla. 4th DCA 1986) (abuse of discretion to award $4,000 in temporary fees where uncontradicted evidence in record indicated $16,000 as a reasonable fee).
There is still another ingredient in this stew. In Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985), the supreme court held that a trial court must set forth specific findings regarding the "lodestar figure," i.e., number of hours reasonably expended multiplied by a reasonable hourly rate, when it makes an award of attorneys' fees. In Pollack v. Pollack, 517 So.2d 707 (Fla. 4th DCA 1987), rev. denied, 528 So.2d 1183 (Fla. 1988), and Hoopes v. Hoopes, 525 So.2d 1015 (Fla. 4th DCA 1988), we held that the Rowe lodestar requirements applied to dissolution of marriage proceedings and allowances of suit money under section 61.16. In Standard Guaranty Insurance Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990), however, the supreme court observed that, while the basic lodestar method may be an appropriate starting point, it is the distinct intent of section 61.16  especially that one party not be limited in the type of legal representation because of inferior financial resources  that governs the allowance of such fees.
While a lodestar analysis may be useful as a starting point in considering a final allowance of fees under section 61.16, we find it inappropriate for interim awards. For one thing, section 61.16 allows such applications "from time to time." Hence in one dissolution case, a single interim award may be all that is necessary to level the playing field, while in another case monthly *1010 or other periodic applications may be called for. Moreover, because the case is just beginning or has not been tried when an interim allowance is sought, there is no way of knowing many of the Rowe elements, such as who is the prevailing party, how many hours were actually necessary to present the case, what are the results achieved, and so on.
At the same time, the Rowe requirement that trial courts make specific findings on the record to allow for meaningful appellate review is certainly unchanged. Specific findings regarding allowances for temporary or prospective fees are especially needed when one considers the limited scope of review under the abuse of discretion test. This means that the trial court should determine on the record whether there is a financial disparity, the extent to which legal services are available to the party with the financial ability to pay, the extent to which those available resources will be used by that party in view of the particular issues to be litigated, the extent to which the needy party lacks similar litigation resources, and the amount necessary to equalize the representation of the parties.
In this case  unless the court envisions periodic applications before trial, a vision which the court should share with the parties  the court appears to have picked a number out of the air. Wife asked for $5,195 in accrued fees and $29,475 in prospective fees. An expert in this kind of case testified that these amounts were reasonable. Husband plainly has substantially superior financial resources. The court allowed $3,500 without any explanation as to how or why that amount was chosen, and on its face it seems to allow but $800 to bring this case through a trial. Section 61.16 was not designed to make the lawyer for the impecunious spouse, in effect, a banker for a loan of the cost of legal services. In the absence of specific findings, we are simply unable to discern the basis on which the trial court came to its conclusion.
We therefore reverse the trial court's temporary award of alimony and interim allowance of suit money and remand with instructions to take up these matters again and thereafter make the kinds of record findings we have described herein. It necessarily follows that we grant wife's motion for attorney's fees on appeal and remand with instructions to determine a reasonable fee for the appellate services to date.
REVERSED AND REMANDED WITH INSTRUCTIONS.
DELL, J., concurs.
POLEN, J., concurring in part; dissenting in part with opinion.
POLEN, Judge, concurring in part and dissenting in part.
I agree with everything contained in the majority opinion, and the results reached, save one point. That point concerns the majority's apparent direction to trial courts that specific findings should be made on interim awards of attorneys' fees as reflected by the following language:
This means that the trial court should determine on the record whether there is a financial disparity, the extent to which legal services are available to the party with the financial ability to pay, the extent to which those available resources will be used by that party in view of the particular issues to be litigated, the extent to which the needy party lacks similar litigation resources, and the amount necessary to equalize the representation of the parties.
Majority opinion p. 1010.
While no one could argue the desirability of such findings, vis-a-vis the task of appellate review, in an "ideal world," we are constantly reminded that trial courts as well as appellate courts seldom if ever operate in an ideal world. While the language implied by the majority that trial courts "should determine" seems more advisory than mandatory, I would be hesitant to embrace such language if it is susceptible of engrafting yet another "findings" requirement upon trial courts. I perceive they are already overwhelmed with a number *1011 of instances in which specific findings are now mandated.
Of course, the flip side to this observation is that orders and records that lack such findings are more susceptible to reversal, where, as here, the reviewing authority is unable to find any basis in law or in fact to support the lower court's disposition. I note further that the majority was careful to state that such findings should be on the record, as opposed to requiring them to appear in the written order.
I depart from the majority opinion only to the limited extent that I do not join in the majority's direction to trial courts as to a requirement of findings to support such a temporary award.
NOTES
[1] We note that a number of trial courts have been reversed for abusing their discretion in refusing to award any temporary alimony at all. See e.g., Lang v. Lang, 551 So.2d 547 (Fla. 4th DCA 1989); Stowe v. Stowe, 502 So.2d 37 (Fla. 4th DCA), rev. denied, 511 So.2d 1000 (Fla. 1987); Littlejohn v. Littlejohn, 495 So.2d 271 (Fla. 2d DCA 1986).