963 So.2d 852 (2007)
Rebeca VELAZQUEZ a.k.a. Rebeca Hernandez, Appellant,
v.
Osvaldo Torres MILLAN, Appellee.
No. 3D07-1120.
District Court of Appeal of Florida, Third District.
August 8, 2007.
Baker Cronig & Keenan and Elizabeth Baker; Legal Services of the Florida Keys and Nancy M. Sutton, for appellant.
Wayne Kruer, for appellee.
Before RAMIREZ, WELLS, and SHEPHERD, JJ.
WELLS, J.
Rebeca Velazquez appeals from a final judgment of dissolution of marriage awarding primary residential responsibility for the parties' four year old son to her former spouse, Osvaldo Torres Millan and effectively ordering Velazquez to pay child support to Millan for a period of time while the child was in her custody. Because we cannot discern from either the record or from the final judgment whether or how the trial court applied section 61.13 of the Florida Statutes in making its custody determination, we reverse the custody determination. Based on Millan's proper confession of error regarding the support award, we reverse that determination as well.
The testimony adduced below, for the most part, appears not to be in dispute. Millan is a Mexican native who entered *853 this country through Texas in 1965. Velazquez is from Cuba. The parties met on-line while Millan was living and working in Key West. Velazquez lived and worked in Miami at the time. The parties married in September 2002 and thereafter resided in Key West.
In February 2003, their son, Daniel, was born. Velazquez quit her job to stay home to care for the child; Millan worked two jobs to support the family. In October 2005, after Hurricane Wilma destroyed the Benihana restaurant where Millan worked, Millan left Key West to work at a Benihana restaurant in Tucson, Arizona. Velazquez and Daniel remained in Key West.
In December 2005, Millan returned to Key West. At this time the relationship began to flounder. According to Millan, Velazquez pushed him to return to work at Benihana. He also began to suspect that Velazquez was engaged in another relationship. After Velazquez stopped speaking to him, Millan left Key West without telling Velazquez where he was going and did not return for over four months. During this time, he made no attempt to communicate with his son, not even on his son's birthday.
In May 2006, Millan returned to Key West and filed for divorce seeking both sole custody and primary residential custodianship of his son. Velazquez, claiming that Millan threatened to abscond to Mexico with the child and that she was "scared," twice notified INS (once in May and once in June) that Millan was not legally in this country. The parties nonetheless agreed that the child should remain in Velazquez' custody pending the divorce and that Millan would enjoy daily visitation with the child. Millan did not, however, visit the child every day and subsequently asked to reduce visitation to every other weekend.
In September 2006, this matter was sent to mediation. No resolution was reached, apparently because the parties could not agree on Velazquez' desire to relocate to Ft. Myers, a more affordable community where she had greater family support. Claiming that he saw "his child almost every day," Millan asked for temporary and permanent custody because, according to Millan, Velazquez had jeopardized both his son's relationship with him and his son's financial well being by turning him in to INS. He asked that this harm be mitigated by giving custody to him to "make it possible for the father to stay [in this country]."
At trial, both parties requested custody of their son. Both agreed to encourage and facilitate a relationship between the son and the other parent. Millan testified that although he was currently unemployed, he had a job lined up and that although he was currently "broke" and sleeping on a sofa in a trailer that he shared with several other men, he was seeking Section 8 housing and as soon as the jointly owned marital home was sold, he would be able to provide a place where he and his son could live. Velazquez, with whom this child had lived his entire life, sought permission from the court to move to Ft. Myers where she had family support and where the cost of living was more affordable than that in Key West.
The trial court, in a form order devoid of any section 61.13 findings, ordered shared parental responsibility and awarded primary residential custody to Millan. Velazquez was ordered to pay child support, including support for a three month period during which she was the primary custodian.
Velazquez maintains here that the trial court engaged in no best interest analysis as mandated by section 61.13 of the Florida Statutes, but instead improperly punished *854 her for reporting Millan to INS. See Rahall v. Cheaib-Rahall, 937 So.2d 1223, 1224-25 (Fla. 2d DCA 2006) (citations omitted) (explaining that courts are not to "penalize the children for the parent's contumacious conduct" and that "a parent's actions in the lawsuit cannot trump the child's right to have custody decided based on his or her best interests"); Burckle v. Burckle, 915 So.2d 747 (Fla. 2d DCA 2005) (reversing change in custody from the father to the mother as a sanction for the father's refusal to comply with court-ordered visitation).
Section 61.13 of the Florida Statutes governing shared parental responsibility and primary residence, expressly mandates consideration of a number of factors when making a custody award:
(3) For purposes of shared parental responsibility and primary residence, the best interests of the child shall include an evaluation of all factors affecting the welfare and interests of the child, including, but not limited to:
(a) The parent who is more likely to allow the child frequent and continuing contact with the nonresidential parent.
(b) The love, affection, and other emotional ties existing between the parents and the child.
(c) The capacity and disposition of the parents to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in lieu of medical care, and other material needs.
(d) The length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity.
(e) The permanence, as a family unit, of the existing or proposed custodial home.
(f) The moral fitness of the parents.
(g) The mental and physical health of the parents.
(h) The home, school, and community record of the child.
(i) The reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference.
(j) The willingness and ability of each parent to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.
(k) Evidence that any party has knowingly provided false information to the court regarding a domestic violence proceeding pursuant to s. 741.30.
(l) Evidence of domestic violence or child abuse.
(m) Any other fact considered by the court to be relevant.
§ 61.13(3), Fla. Stat. (2006) (emphasis added).
The judgment in this case addresses none of these factors. And, other than observing, at a post-judgment hearing on Velazquez's motion for a stay pending appeal, that the court felt that Millan would be the parent most likely to provide frequent contact with the other parent because Velazquez had tried to relocate;[1] had withheld *855 information from Millan;[2] had misrepresented why Millan left town;[3] and had not been truthful about the support Millan had provided,[4] there is nothing in the record to indicate that the best interests of this child were evaluated in conformity with all of section 61.13's dictates. See Decker v. Lyle, 848 So.2d 501, 503 (Fla. 2d DCA 2003) (confirming that while there is no requirement that a trial court make specific written findings in awarding custody, either "the record or the final judgment must reflect that the custody determination was made in the best interests of the child."). As Williams v. Williams, 845 So.2d 246 (Fla. 2d DCA 2003), confirms, a decision based on less than the court's consideration of all the factors set out in section 61.13 is insufficient:
In light of the trial judge's conclusion that the former wife had absconded with the child in violation of the final judgment and had deprived the child contact with the former husband for over a year, we fully understand why the trial judge believed that he had heard sufficient evidence to award the former husband temporary primary residence of the child. Section 61.13(3)(a), (j), Florida Statutes (2002), provides that the best interests of a child may be determined in part based upon "the parent who is more likely to allow the child frequent and continuing contact with the nonresidential parent" and "the willingness and ability of each parent to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent." The former wife's actions provided evidence sufficient to support a finding that these two factors did not weigh in her favor. However, section 61.13(3) requires the trial court to consider numerous other factors in determining the best interests of a child.
Williams, 845 So.2d at 249.
Accordingly, we reverse the custody award and remand this matter for entry of a custody award addressing all of the factors mandated by section 61.13 of the Florida Statutes. We leave it to the trial court's discretion to decide, on its own or upon request, whether to take additional testimony to facilitate this determination. We also reverse that that portion of the final judgment which effectively obligates Velazquez to pay child support to Millan for any period of time during which the child is in her custody, an award which Millan concedes was error.
Reversed and remanded with instructions.
RAMIREZ, J., concurs.
SHEPHERD, J., concurring in result.
I concur in the judgment of the court reversing this matter for entry of a proper custody order after taking additional testimony if appropriate. Appellant argues correctly that the order of the trial court should be reversed for failing to express "either on the record or in the final judgment that an award of primary custody to one parent is in the best interests of the child." Bader v. Bader, 639 So.2d 122, 124 *856 (Fla. 2d DCA 1994); see also Murphy v. Murphy, 621 So.2d 455 (Fla. 4th DCA 1993). I do not consider it necessary for me to engage in an analysis of the facts of this case at this time. I do not rule out the possibility that the trial court may, after weighing all relevant factors, rule in exactly the same way.
NOTES
[1] There is no evidence that Velazquez actually tried to relocate. The record is that she wanted to relocate to a more affordable community where she had family support and that she sought court permission to do so. There is nothing wrong in this. See § 61.13001(7), Fla. Stat. (2006) (expressly stating that "[n]o presumption shall arise in favor or against a request to relocate with the child when a primary residential parent seeks to move the child"); § 61.13001(7)(e) Fla. Stat. (2006) (requiring a trial court to consider, among other things, whether "relocation will enhance the general quality of life for both the parent . . . and the child, including, but limited to, financial or emotional benefits").
[2] We find nothing in the record, such as it is, to show that any relevant information was withheld from Millan.
[3] We find no record support for this observation. Velazquez testified, as did Millan, that Millan left town for four months without telling her where he was going. She did not testify that he left without telling her why he was leaving.
[4] The genesis of this observation appears to be Velazquez' testimony that she did not consider the funds Millan deposited into a joint account which she used to buy food and to pay expenses to be support.