973 So.2d 501 (2007)
Diana PEACOCK, Appellant,
v.
Donald PEACOCK, Appellee.
No. 3D06-737.
District Court of Appeal of Florida, Third District.
December 12, 2007.
Rehearing Denied February 21, 2008.
Greenman & Manz, Marathon; Greene Smith McMillan and Cynthia L. Greene, Miami, for appellant.
Lauri Waldman Ross, Miami, for appellee.
Before COPE and WELLS, JJ., and FLETCHER, Senior Judge.
PER CURIAM.
Diana Peacock, the former wife, has appealed a judgment of dissolution of marriage, which awarded custody of the three minor children to the former husband Donald Peacock. We affirm.
The final judgment tells us that the trial court carefully considered the statutory factors listed in section 61.13(3), Florida Statutes (2005), in reaching its conclusions that it would be in the best interests of the children that the parties share parental responsibility for the children and that the father be the primary residential parent. The trial court did not list or explain in its final judgment the nature of its considerations as to the several factors of section 61.13(3). The former wife argues that this was error. We disagree. Section 61.13(3) does not mandate written findings, see Castillo v. Castillo, *502 950 So.2d 527 (Fla. 4th DCA 2007); cf. Velazquez v. Millan, 963 So.2d 852, 854-55 (Fla. 3d DCA 2007), and the record contains substantial competent evidence in support of the court's decision. See Rodriguez v. Williams, 911 So.2d 170 (Fla. 3d DCA 2005); Miller v. Miller, 842 So.2d 168 (Fla. 1st DCA 2003).
We are unable to agree with the partial dissent because the parties have not requested, in the trial court or this Court, that the daughters be placed separately with the mother.
We have examined the record and conclude that there is no reversible error as to the other point on appeal.[1] Accordingly, the final judgment is affirmed.
Affirmed, as Modified.
COPE, J., and FLETCHER, Senior Judge, concur.
WELLS, J., Concurring in part, dissenting in part.
While I agree that the custody order with regard to the parties' oldest child, C.P., should be affirmed, I would reverse the custody determination as to the other two children, R.P. (age twelve) and B.P. (age five). While it may generally be best to keep siblings together, children should not necessarily be considered a package deal, and what is best for one child may not be in the best interests of the others.
The record in this case supports the conclusion that the eldest child is a special needs child whose interests are best served by leaving him in the stable environment that he has known his entire life. The same cannot, however, be said about the two younger children, especially not the five-year-old.
The final judgment contains the following findings with respect to R.P. and B.P., which are either not relevant or are not supported by the record:
[R.P.] and [B.P.] have an interest in dance and are very involved in school and with their local community. If moved to Arizona, [R.P.] and [B.P.] would become separated for the first time in their life from both sets of grandparents, their aunt and cousins, and from their father. Of special note is the relationship between [B.P.] and her autistic 8 year old cousin [G.] who presently lives nearby. [G]'s mother explained that [B.P.] has a way with [G.] that reaches through his autism and the two children are very closely bonded as a result. Similarly [R.P.] has a close association and is bonded with her cousin [C.] who is her age.
. . . .
[R.P.] and [B.P.] are connected through their community and school by their dance classes and with teachers and classmates enrolled in these classes. [R.P.] has learning difficulties which her local community and teachers are aware of and she receives support and assistance from a large array of supporters.
The record shows that R.P. is a bright, academically gifted girl who has been, and is capable of being, an honor roll student. There is nothing in the record to suggest that she has learning difficulties; rather, her teacher testified that her grades slipped because she was not turning in her homework assignments on time. Moreover, while R.P. and B.P. enjoy dance classes, these classes may be provided anywhere. The record also confirms that it is C.P., not B.P., who has a special *503 relationship with their autistic cousin, G. And, in any event, while this role may be of significant benefit to the disabled cousin, I am unconvinced that such a factor would trump a child's relationship with his/her mother. The record further confirms that B.P., not R.P., has a close relationship with her ten-year-old cousin C. I am equally unconvinced that B.P.'s relationship with this cousin should be a bond viewed as superior in importance to the bond between B.P. and her mother. Finally, the maternal grandmother testified that if the mother was awarded custody of the children, the maternal grandparents intend to move to Arizona to help care for their grandchildren. Should that occur, as far as being in proximity to a set of grandparents, the children will fare the same whether they live in Miami or Arizona.
In short, there is very little record evidence with respect to R.P. and B.P., as the vast majority of the testimony concerns C.P. Moreover, the order under review includes misstatements of fact which make me question the trial judge's consideration and determinations as to these girls. While it is true that Florida law has long recognized a preference for keeping siblings together, if possible, when it is in the children's best interests, see Glover v. Glover, 834 So.2d 927, 929 (Fla. 5th DCA 2003), it has yet to be demonstrated in, this "case that the decision at issue was in the best interests of these girls. I would, therefore, reverse as to R.P. and B.P. and remand for additional findings of fact and for entry of a final judgment explicating the reasons for the award of custody of these two children.
NOTES
[1] We strike the second sentence of paragraph 30 of the judgment because it refers to learning difficulties of one of the daughters, when there was no evidence that the daughter had any learning difficulties.