WELLS, Judge.
 

 Esther Cobo appeals from a final judgment annulling her marriage to Francisco Sierralta, awarding custody of their almost
 

 eight-year-old daughter to Sierralta, and denying enforcement of an earlier, but unsatisfied, temporary attorney’s fee award. We reverse the judgment and remand for immediate enforcement of the earlier entered temporary attorney’s fee award; for an award of additional temporary attorney’s fees; for an expedited hearing to set a visitation schedule for Cobo and the minor child; for a dissolution of marriage; and for application of Chapter 61 to all custody, visitation, support and property issues between these parties.
 

 Facts
 

 ‘ The parties are Venezuelan citizens, who met in Venezuela in the late 1990’s. Their minor child was born out of wedlock in Venezuela on May 4, 2000. In March 2002, Sierralta obtained resident alien status and the following month Cobo and the minor child entered the United States on tourist visas. The parties were married in Florida in August 2002.
 

 Eighteen months after the marriage, Si-erralta petitioned for dissolution seeking enforcement of a Marital Settlement Agreement between himself and Cobo.
 
 [1]
 
 As part of that petition, Sierralta alleged under oath that shared parental responsibility, with Cobo as primary residential parent, was in the best interest of the minor child.
 

 
 *496
 
 Shortly after this petition was filed, the parties rescinded their Marital Settlement Agreement. Almost predictably, the parties’ relationship deteriorated, culminating in domestic violence claims by Cobo and a temporary custody request by Sierralta. When Cobo threatened during an argument to leave the country with the child and claimed that she had never been divorced from her first husband, Sierralta amended his petition to secure an annulment and custody of the child.
 

 Over the next four years, the parties litigated the validity of their marriage as well as who should have custody of their child. For this entire period, Cobo litigated this case without an award of temporary attorney’s fees. It was not until January 25, 2007, three years after this action commenced, that temporary attorney’s fees were finally awarded to Cobo, and then only in an amount that would permit her to litigate custody and visitation issues; no amount was awarded to permit her to contest Sierralta’s annulment claim:
 

 Most of the prior litigation in this case has resulted from issues regarding the custody and visitation of the minor child. The court finds that 15% of this case has and will be spent litigating the issue of annulment.
 

 Wife’s attorney’s prospective attorney’s fees and costs budget shall be reduced by 15% or the amount of litigation time to be spent litigating the annulment issue.
 

 Wife’s attorney shall be awarded $15,000 in prospective attorney’s fees and $2,000 in costs for the purpose of litigating the custody and visitation issues in this case. Attorney’s fees and costs are not awarded for the litigation of the issues of annulment or equitable distribution.
 

 Despite this order and Cobo’s repeated attempts to enforce it, no sums were paid to Cobo to secure her representation.
 
 [2]
 

 On February 11, 2008, a final judgment denying Cobo’s petition for dissolution of marriage and granting Sierralta’s petition for an annulment was issued. The judgment designated Sierralta as the primary residential parent, nullified the previously entered — but never
 
 paid
 
 — temporary fee award, and denied any additional fee award to Cobo because of her opposition to Sierralta’s demand for an annulment:
 

 ATTORNEY’S FEES:
 
 The mother’s motion for award of attorney’s fees is DENIED. Any temporary orders granting to the mother an award of attorney’s fees are hereby vacated. The Court finds that mother’s opposition to an annulment when the mother had previously stipulated to the fact that there was no legal intact marriage amounts to meritless litigation as defined by
 
 Rosen v. Rosen,
 
 696 So.2d 697 (Fla.1997).
 

 We reverse this final judgment for two reasons: first, we conclude that Sierralta failed to present sufficient evidence to overcome the presumption of a valid marriage between these parties, and second because we conclude that the failure to award temporary attorney’s fees to litigate all issues in this case deprived Cobo of any meaningful opportunity to defend.
 

 The Annulment
 

 This action commenced when Sier-ralta filed a petition for dissolution of marriage in which he alleged under oath that
 
 *497
 
 he and Cobo were married. Although Si-erralta subsequently claimed that his marriage to Cobo was void because Cobo was still married to her first husband when he and Cobo were married, Sierralta has never denied that a marriage ceremony between himself and Cobo — which he believed to be valid — took place. On these facts, the court below was required to presume that Sierralta and Cobo were legally married until such time as Sierralta proved otherwise.
 
 See Stewart v. Hampton,
 
 506 So.2d 70, 71 (Fla. 5th DCA 1987) (concluding that “[o]nce a marriage is shown to have been ceremonially entered into it is presumed to be legal and valid” and that that the party attacking the legality of such a marriage bears the burden of rebutting this presumption);
 
 Grace v. Grace,
 
 162 So.2d 314, 317 (Fla. 1st DCA 1964) (“It is an elementary principle of domestic relations law that a marriage, once shown to have been ceremonially entered into ..., is presumed to be legal and valid” and that “the burden of proving the continuance of the previous marriage and the invalidity of the subsequent marriage is on the party attacking the validity of the latter”);
 
 see Teel v. Nolen Brown Motors, Inc.,
 
 93 So.2d 874, 876 (Fla.1957) (recognizing that “[a] presumption exists in favor of the validity of the last marriage,” which is “one of the strongest presumptions known to the law,” such that “[t]he burden of rebutting it rests upon the party attacking the legality of the last marriage”);
 
 In re Estate of Beacher,
 
 177 So.2d 838, 839-40 (Fla. 3d DCA 1965) (recognizing that once prima facie evidence of a marriage is presented, the party asserting the illegality of that marriage bears the burden of proving that assertion). Sierralta failed to sustain this burden.
 

 According to Sierralta, no valid marriage existed between the parties because Cobo could produce no documentation to prove that she was divorced from her first husband, and because Cobo claimed during an argument and in her deposition that she was still married to her first husband when she married Sierralta:
 

 VOID MARRIAGE:
 
 The husband has now learned, through the admission of the wife herself, that her previous marriage to OSCAR FRANCISCO GAMEZ DELANEY was never terminated by a divorce in Venezuela. In the past, the husband has repeatedly requested that the wife furnish to him a certified or official document showing that the wife was divorced from her previous husband. The wife has never produced such a document. A request for production was filed by the husband in this cause on April 5, 2004, seeking such documentation, and no response was made thereto. However, the wife continued to advise the husband that she did indeed get a divorce in Venezuela from the previous husband and that she would find a way to get a hold of the documents and furnish them to the husband herein. Towards the end of April, 2005, when the parties were engaged in an argument about timesharing between the husband and the minor child of the parties, the wife threatened that she would leave the country with the minor child because she was illegally in the United States anyway and, further, she told the husband that she is still married to the previous husband at the present time and never procured a divorce from said previous husband. This makes the marriage between the parties void.
 

 The fact that Cobo could produce no documentation during the early stages of these proceedings proving that her first marriage in Venezuela had been terminated (again in Venezuela) does not overcome the strong presumption that her marriage to Sierralta is valid. This is so because it was not her burden to prove the validity of
 
 *498
 
 the current marriage; rather, it was Sier-ralta’s burden to prove the invalidity of the current marriage. In any event, by the time of the final hearing, Cobo had procured evidence that her first marriage had been legally terminated. More specifically, although Cobo was unable to secure copies of documents confirming that her first marriage had been terminated, she was able to present a certified and sworn written declaration from her first husband, Oscar Delaney, in which he attested that: (1) he and Cobo were married in Venezuela in 1988; (2) after only ninety-two days, he had the marriage annulled in the “Seventh Tribunal of First Instance in Civil of the Judicial District of the State Merida” in Merida, Venezuela; and (3) because of a flood all of the documents confirming the annulment were destroyed. Cobo also presented documentary evidence that Delaney had remarried in Venezuela in 1994, a marriage which expert testimony confirmed would not have been authorized under Venezuelan law absent official confirmation by a Venezuelan notary that no legal impediment to Delaney’s remarriage existed.
 
 Accord Guelman v. Guelman,
 
 453 So.2d 1159 (Fla. 3d DCA 1984) (“It is presumed that an official performing a marriage service, whether in a foreign or domestic jurisdiction would not have performed the service if there was any known impediment to the marriage.”). Because Sierralta did not sufficiently rebut this evidence at the final hearing, he did not overcome the strong presumption that the parties’ marriage is valid.
 

 The presumption also was not overcome by Cobo’s purported statements that her first marriage had not been legally terminated. As Cobo explained at the final hearing, these statements stemmed from her mistaken belief that, absent documentation to prove that her first marriage had been legally terminated, she had to admit that it had not:
 

 [SIERRALTA’S ATTORNEY]: Now, let’s talk about your previous marriage. Do you recall that in your deposition, you admitted you were still married to Mr. Gamez?
 

 [COBO]: Yes.
 

 [SIERRALTA’S ATTORNEY]: Why on earth would you say that under oath if you had procured a divorce from Mr. Gamez?
 

 [COBO]: Simply because I did not have in my hands how to prove the annulment of my marriage.
 

 Neither this mistaken belief, nor Cobo’s reliance on it, is sufficient to overcome the presumption of validity of the instant marriage between Cobo and Sierralta. The marriage between these parties should not, therefore, have been annulled. For this reason alone the final judgment must be reversed.
 

 Attorney’s Fees
 

 The judgment must also be reversed because the trial court’s failure to award and to enforce a temporary fee award deprived Cobo of any meaningful representation. Although four different attorneys appeared for short periods of time on Cobo’s behalf in these proceedings (one of whom was from the Legal Aid Society of Dade County Bar Association), Cobo for the most part litigated this action pro se. It was not, in fact, until late in the proceedings that a temporary fee award was entered, and then only for the limited purposes of litigating custody and visitation issues. No amount was awarded for litigating whether a valid marriage existed.
 

 Despite the substantial disparity between these battling spouses’ abilities to secure representation
 
 [3]
 
 and findings by the
 
 *499
 
 lower court that Cobo was in need of a temporary fee award, the lower court repeatedly refused to enforce the interim fee award. This effectively precluded Cobo from meaningful representation not only with regard to whether a valid marriage existed, but also with regard to who should enjoy custody of the child she bore two years before Sierralta — whether or not successfully — -married her.
 

 To add insult to injury, the interim fee award was nullified in the final judgment on a finding that Cobo had engaged in meritless litigation by opposing an annulment after “stipulat[ing]” that her marriage to Sierralta was invalid. The record reveals that Cobo entered into no such “stipulation.” To the contrary, this “stipulation” came not from Cobo, but from an order entered by one of several judges who oversaw this action, following a hearing at which Cobo’s Legal Aid attorney of only a month mistakenly sought to amend Cobo’s pleading because Cobo could produce no proof of her prior divorce:
 

 [COBO’S ATTORNEY]: Your Honor, I have been on this case for a month, and certain facts have come to light.... [A]nd I would like to give to your Honor right now — with your permission—
 

 THE COURT: Yes.
 

 [COBO’S ATTORNEY]: — an Emergency Motion Petition from dissolution of marriage to one of paternity because my client agrees that she was married to another man nineteen years ago, that this Petitioner knew about it,
 
 but that she cannot prove their divorce nor their death.
 

 THE COURT REPORTER: Are you saying, death?
 

 [COBO’S ATTORNEY]: Yes,
 
 she cannot prove their divorce or their death.
 
 So I am now amending from a dissolution of marriage to one of paternity.
 

 (Emphasis added).
 

 Given this former attorney’s mistaken belief that Cobo bore the burden of proving that her prior marriage had legally ended; the fact that Cobo’s subsequent attorney amended Cobo’s pleadings to once again reaffirm her marriage to Sier-ralta and seek a divorce; and that the primary issue litigated during the final hearing was validity of this marriage, we find the lower court erred in determining that Cobo had “stipulated” that no valid marriage existed and that Cobo had litigated the annulment issue in bad faith. This is especially so since a substantial portion of the. final hearing was devoted to expert testimony from
 
 both
 
 parties regarding whether Cobo’s prior marriage had been legally terminated in Venezuela. In short, Cobo’s purported “stipulation” regarding validity of the instant marriage provides no basis for denying a fee award to her.
 

 In these proceedings, Cobo was entitled to a fee award to litigate all custody and visitation issues.
 
 See
 
 § 61.16(1), Fla. Stat. (2008) (providing that “[t]he court may from time to time, after considering the financial resources of the parties, order a party to pay a reasonable amount for attorney’s fees, suit money and the cost to the other party of maintaining or defending any proceeding under this chapter”); § 61.514, Fla. Stat. (2008) (stating that “a court of this state has jurisdiction to make an initial child custody determination” where “[t]his state is the home state of the child on the date of the commencement of the proceeding”);
 
 Rodriguez v. Williams,
 
 911 So.2d 170 (Fla. 3d DCA 2005) (applying the factors set forth in chapter 61 for evaluating the welfare and best interests
 
 *500
 
 of the child to a custody determination between an unmarried couple).
 

 She was also entitled to a fee award to litigate all issues relating to whether this marriage should be dissolved. As this court confirmed in
 
 Pefaur v. Pefaur,
 
 617 So.2d 425, 425-26 (Fla. 3d DCA 1993), where one spouse contests the validity of a current marriage on a claim that a prior marriage had not been validly terminated, the other spouse may be awarded fees to litigate the validity issue:
 

 Florida’s matrimonial statute ... provide[s] specifically for the award of interim attorney’s fees for “the cost ... of maintaining or defending any proceeding under this chapter....” § 61.16, Fla. Stat. (1991);
 
 see also id.
 
 § 61.071. The leading case,
 
 Nichols v. Nichols,
 
 519 So.2d 620 (Fla.1988), emphasizes the importance of an interim award where it is needed “to mitigate the harm an impecunious spouse would suffer where the other spouse’s financial advantage accords him or her an unfair ability to obtain legal assistance.”
 
 Id.
 
 at 621-22;
 
 Robbie v. Robbie,
 
 591 So.2d 1006, 1008-09 (Fla. 4th DCA 1991).... As Judge Donner observed, “[T]he law does not permit one party with substantial means to overpower the other by denying that party the right to equal representation.”
 

 The public policy here is that where there is a bona fide dispute as to the validity or invalidity of the marriage, there should be a judicial resolution of that dispute and the interrelated estop-pel and equitable issues — especially in a case where there are minor children. The trial court correctly awarded interim attorney’s fees and costs so that the wife can have a full and fair opportunity to be heard on these matters.
 

 The award is supported by ... the terms of section 61.16 and the considerations announced in
 
 Nichols.
 

 Id.
 
 at 425-26;
 
 see also Gilvary v. Gilvary,
 
 648 So.2d 317, 318 (Fla. 3d DCA 1995) (concluding that where there is a question in an annulment action as to whether the parties have a valid marriage based on a prior marriage by one of the parties to another person, a party may still be entitled an equitable award of temporary attorney’s fees so that he/she can litigate the question).
 

 In this case, Cobo was entitled to a temporary fee award to permit her to litigate all of the issues raised below. As the record before us clearly demonstrates, the failure to award such fees to her, and certainly the failure to enforce the only limited award made, deprived Cobo of any meaningful representation not only with regard to whether a valid marriage existed, but also to where and with whom the parties’ child should live.
 
 See Robbie v. Robbie,
 
 591 So.2d 1006, 1009 (Fla. 4th DCA 1991) (confirming that the purpose of a fee award in dissolution actions “is to ensure that both parties ... have similar access to counsel and can thus fight the action on a nearly equal footing”);
 
 see also Rosen v. Rosen,
 
 696 So.2d 697, 699 (Fla. 1997) (reiterating the standard announced in
 
 Canakaris v. Canakaris,
 
 382 So.2d 1197 (Fla.1980), that the purpose of a fee award in dissolution action is to ensure that both parties have “a similar ability to obtain competent legal counsel”); Young
 
 v. Young,
 
 898 So.2d 1076, 1077 (Fla. 3d DCA 2005) (confirming that the purpose of a fee award in dissolution actions is to “ensure that both parties to a dissolution case have similar access to counsel and that neither has an unfair ability to obtain legal assistance because of the other’s financial advantage”) (emphasis supplied).
 

 
 *501
 
 Custody and Visitation
 

 Finally, we would be remiss if we did not address the issues of custody and visitation. The parties’ minor child was born in Venezuela two years before the parties were married. After her birth, Sierralta had Cobo and the child brought to America. Cobo, who apparently has no legal right to remain here, has now been forced to return to Venezuela. Custody has been awarded to Sierralta, with only infrequent telephone contact between mother and child. All of this was accomplished without Cobo having adequate representation and without explanation in the final judgment or otherwise.
 

 Needless to say, section 61.13 of the Florida Statutes expressly requires consideration of a number of factors when making a custody determination.
 
 [4]
 

 See Velazquez v. Millan,
 
 963 So.2d 852, 854 (Fla. 3d DCA 2007). While section 61.13(3) does not mandate written findings justifying a custody award, the record must at least demonstrate that section 61.13 factors were considered in making the award.
 
 Peacock v. Peacock,
 
 973 So.2d 501, 502 (Fla. 3d DCA 2007);
 
 Velazquez,
 
 963 So.2d at 854;
 
 Decker v. Lyle,
 
 848 So.2d 501, 503 (Fla. 2d DCA 2003) (confirming that while there is no requirement that a trial court make specific written findings in awarding custody, either “the record or the final judgment must reflect that the custody determination was made in the best interests of the child”). We cannot discern that any of these factors were considered in this case. And, in light of the fact that Cobo had no adequate representation to advocate her position, we cannot conclude that the decision on which parent should have primary residential custody of the minor child was made with the full consideration of the statutory factors.
 

 Further, we cannot conclude with any degree of certainty that the trial judge’s misconception of Cobo’s position regarding an annulment of her marriage to Sierralta did not affect the ultimate custody determination. Accordingly, on remand, the issue of custody must be reconsidered in the context of a dissolution of a valid marriage, with both parties having similar access to counsel. Moreover, on remand the issue of visitation with Cobo must be addressed on an expedited basis to provide meaningful visitation between Cobo and the parties’ child (either here or in Venezuela) during the upcoming summer months and otherwise.
 

 Conclusion
 

 Accordingly, the final judgment on review is reversed and remanded for dissolution of the parties’ marriage and for consideration of all matters as required by Chapter 61 of the Florida Statutes, including distribution of assets and liabilities, custody, visitation and support. On remand, the January 25, 2007 order on temporary attorney’s fees shall be promptly enforced and consideration given to an additional fee award for Cobo’s representation in the prior trial and at future legal proceedings. The issue of summer visitation with Cobo should be addressed immediately, without delay, and will not be postponed for consideration of any motions for rehearing filed herein.
 

 
 *502
 
 Reversed and remanded with instructions.
 

 [1]
 

 . Cobo, pointing to numerous visits to Venezuela, claimed that Florida's courts lacked jurisdiction to adjudicate custody issues. However, it is clear that Florida was the home state of the parties’ child, that the child had resided in Florida a majority of the time, and that the child had lived here for six months immediately before this action was brought.
 
 See
 
 § 61.514(l)(a), Fla. Stat. (2008) (stating that "a court of this state has jurisdiction to make an initial child custody determination” where "[tjhis state is the home state of the child on the date of the commencement of the proceeding”);
 
 see also %
 
 61.503(7), Fla. Stat. (2008) (defining "home state” as "the state in which a child lived with a parent ... for at least 6 consecutive months immediately before the commencement of a child custody proceeding,” and providing that "[a] period of temporary absence of any of the mentioned persons is part of the period”); § 61.506(1), Fla. Stat. (2008) (providing that "[a] court of this state shall treat a foreign country as if it were a state of the United States for purposes of applying ss. 61.501-61.523”);
 
 Karam
 
 v.
 
 Karam, 6
 
 So.3d 87, (Fla. 3d DCA 2009) (finding that, under the Uniform Child Custody Jurisdiction and Enforcement Act, sections 61.501-.542, Florida Statutes (2008), jurisdictional priority over child custody proceedings lies in the child's "home state”). -
 

 [2]
 

 . Although Sierralta was ordered to pay a portion of this fee award to Cobo within thirty days, he did not do so. When Cobo moved to enforce the order, a successor judge ordered Sierralta to comply with the fee order within ten days. Sierralta again failed to comply. When Cobo filed yet another motion to secure compliance, Sierralta was excused from complying with the order to pay temporary attorney's fees.
 

 [3]
 

 . Sierralta’s attorney admitted at oral argument that Sierralta had spent well over
 
 *499
 
 $100,000 on this matter. Cobo, on the other hand, with no skills, and according to Sierral-ta, working illegally as a hairdresser, had no funds to join the fight.
 

 [4]
 

 . We acknowledge that, effective October 1, 2008, the Florida Legislature amended various sections of Chapter 61, including section 61.13, to remove the references therein to "custody,” "primary residence,” "primaiy residential parent,” and "visitation” in favor of a "parenting plan” that includes "time sharing.”
 
 See
 
 Ch. 2008-61, s. 8 at 793-802, Laws of Fla.;
 
 In re Amendments to the Florida Family Law Rules,
 
 995 So.2d 445 (Fla.2008). The statutory revisions do no alter our analysis in this case, as section 61.13 still requires the lower court to consider factors to determine the best interests of the child.