873 So.2d 483 (2004)
James G. GLASGOW, Appellant/Cross-Appellee,
v.
Elvira B. WOLFE, Appellee/Cross-Appellant.
No. 1D03-2891.
District Court of Appeal of Florida, First District.
May 13, 2004.
*484 Kristin Adamson, of Novey, Mendelson & Adamson, Tallahassee, for Appellant.
Lawrence C. Datz, of Datz & Datz, P.A., Jacksonville, for Appellee.
BROWNING, J.
James G. Glasgow, Jr. (Appellant/Cross-Appellee), appeals certain rulings made by the trial court in its final judgment of paternity, and Elvira B. Wolfe (Appellee/Cross-Appellant) cross-appeals the trial court's failure to hold a hearing or to make specific factual findings in support of wholly denying her motion for attorney's fees. Having found competent, substantial evidence in the record to support the court's awarding primary residential custody of the parties' minor child to Appellee/Cross-Appellant, the child's mother, pursuant to the factors enumerated in section 61.13, Florida Statutes (2001), we find no abuse of discretion and affirm, without further discussion, those rulings relating to primary residency and child-support obligations. See Lafaille v. Lafaille, 837 So.2d 601, 604 (Fla. 1st DCA 2003) (stating that trial court's factual findings in final judgment in family-law proceeding came to appellate court with presumption of correctness and could not be disturbed absent a record demonstrating reversible error); Porzio v. Porzio, 760 So.2d 1075, 1076 n. 1 (Fla. 5th DCA 2000) (noting that role of fact-finder is to weigh credibility of witnesses and to resolve evidentiary conflicts, and that on truly discretionary matters, appellate court must recognize trial court's "superior vantage point"). However, given the lack of specific findings of fact in the final judgment and the absence of any apparent basis in the record for denying all of Appellee/Cross-Appellant's attorney's fees, we reverse and remand for the trial court to make appropriate findings to explain its ruling on the motion for attorney's fees. See Davies v. Turner, 802 So.2d 1195 (Fla. 1st DCA 2002); Karpovich v. Karpovich, 739 So.2d 137 (Fla. 5th DCA 1999); Hamlin v. Hamlin, 722 So.2d 851 (Fla. 1st DCA 1998); Raehn v. Raehn, 557 So.2d 152, 155 (Fla. 1st DCA 1990).
Section 61.16(1), Florida Statutes (2001), authorizes an award of attorney's fees, suit money, and costs "after considering the financial resources of both parties." "The purpose of this section is to ensure that both parties will have a similar ability to obtain competent legal counsel" in the equitable arena of family-law proceedings. Rosen v. Rosen, 696 So.2d 697, 699 (Fla. 1997). See Bane v. Bane, 775 So.2d 938 (Fla.2000); Sumlar v. Sumlar, 827 So.2d 1079, 1084 (Fla. 1st DCA 2002). "This provision expressly requires the court to make findings regarding the parties' respective *485 financial needs and abilities to pay." Sumlar, 827 So.2d at 1084. See Raehn, 557 So.2d at 152; Stewart v. Stewart, 534 So.2d 807 (Fla. 1st DCA 1988). Without holding a hearing, the trial court determined that neither party is entitled to an award of attorney's fees and costs, but the final judgment of paternity lacks any specific factual findings to support that ruling.
In this appeal, the parties' respective incomes are essentially undisputed. The trial court found that Appellee/Cross-Appellant's gross monthly income (as reflected on her financial affidavit) was $2,090.00. Appellant/Cross-Appellee testified that he had not been employed since leaving the United States Marine Corps in February 2000; he had not made any genuine effort since September 2000 (when Appellee/Cross-Appellant moved out with the parties' child) to find a full- or part-time job. Citing Appellant/Cross-Appellee's financial affidavit, the court initially calculated his gross monthly income as $2,151.00. Relying partly on the testimony of a vocational rehabilitation counselor concerning the job statistics for metropolitan Jacksonville, the court found that Appellant/Cross-Appellee could earn $6.50-$8.00 hourly in an entry-level job. The court imputed to him income in the amount of $6.50 an hour, $260.00 a week, and $1,118.00 a month gross, resulting in regular and imputed gross monthly incomes totaling $3,269.00.
The parties' financial affidavits offered the only evidence regarding their respective net monthly incomes. The difference between Appellant/Cross-Appellee's listed monthly income and expenses is a $473.67 surplus. Subtracting his total debts from his total assets showed a total net worth of $36,131.00. Appellee/Cross-Appellant's listed total monthly expenses exceeded her net income, producing a monthly deficit of $656.12. The difference between her total assets and total debts is negative $4,818.00. Of the parties' net available income, Appellant/Cross-Appellee had 59% and Appellee/Cross-Appellant had 41%. Appellant/Cross-Appellee received retirement income, had income imputed to him, and had a superior net worth, whereas Appellee/Cross-Appellant had a lower income, virtually no assets, and substantial liabilities. Neither party had high income-producing assets or owned his or her own residential home, although Appellant/Cross-Appellee owned a $435.59 monthly rent-producing condominium in Maryland. Given the disparity in the parties' incomes and other financial circumstances, the trial court is required to explain its denial of any attorney's fees to Appellee/Cross-Appellant. See Nichols v. Nichols, 519 So.2d 620 (Fla.1988); Hamlin, 722 So.2d at 852.
We AFFIRM the final judgment of paternity in part, REVERSE in part, and REMAND for the trial court to make specific factual findings to support and explain its ruling on Appellee/Cross-Appellant's motion for attorney's fees.
ERVIN and DAVIS, JJ., concur.