954 So.2d 1186 (2007)
Sunil GHAY, Appellant,
v.
Poonam GHAY, Appellee.
No. 2D06-2408.
District Court of Appeal of Florida, Second District.
April 13, 2007.
Nicholas P. Sardelis, Jr., of Sardelis and Bowles, L.L.P., Sarasota, for Appellant.
Susan L. Chapman of Susan L. Chapman, P.A., Sarasota, for Appellee.
ALTENBERND, Judge.
Sunil Ghay, the husband, appeals a temporary order entered in a dissolution of marriage proceeding that requires him to pay $10,000 per month in temporary alimony, $2,959 per month in temporary child support, and $15,000 in temporary attorneys' fees.[1] The order was entered based upon the report and recommendation of a general magistrate. We reject without further comment the husband's contention that the trial court improperly considered the income from certain corporate entities in determining appropriate awards of temporary support. However, the calculations supporting each award in the court's order are not consistent with the evidence presented. We therefore reverse the amounts of each award and remand for reconsideration.
*1188 The parties were married in 1987 and have three children, now 18, 15, and 9 years old. The wife, Poonam Ghay, filed the petition for dissolution of marriage in August 2005, asking to be designated the primary residential parent of the children and seeking child support, alimony, equitable distribution of marital assets, and a contribution to her attorneys' fees. The husband filed a counterpetition agreeing that the wife should be the primary residential parent for the children and agreeing that there should be an equitable distribution of the marital assets. He also requested alimony and partition of two pieces of real property.
On December 2, 2005, the parties appeared before a general magistrate for a hearing on the wife's request for temporary relief including child support, alimony, attorneys' fees, and an injunction preventing the husband from disposing of marital assets. Our limited record does not contain the wife's motion, the financial affidavits of the parties, or any supporting documentation evidencing their respective incomes.
The husband did not testify at the hearing. The wife presented various witnesses and her own testimony regarding the family's finances. That evidence established that the parties have run a series of businesses since 1993. In the first business, the parties suffered a serious loss that resulted in credit problems. The second business, howevera gas station and food martwas successful. It led to the parties acquiring other business interests. In 2002, on the advice of an accountant, the parties decided to incorporate their business ventures and name the husband's father as the president and director of the new corporations, reportedly because the parties' personal credit problems prevented them from qualifying to have a Lotto machine at the gas station and food mart. In the time immediately preceding the filing of the dissolution proceedings, the parties were involved in five subchapter S corporationsfour "owned" by the husband's father and one "owned" by the husband. The husband was listed as an employee of one of the father's corporations and received a relatively modest reported income from that corporation, and the wife was listed as an employee of the husband's corporation and received a modest reported income from that corporation.
The wife presented the testimony of an accountant who testified that in 2004 all of the income reported for the four corporations held by the husband's father was attributed to the father on the father's tax returns. Combined, the various corporations had gross receipts of millions of dollars in 2004. According to the accountant, the father received the income and proceeds or profits from the corporations "just for tax purpose[s], not from the monetary point of view." According to the wife's unrebutted testimony, the father was effectively a straw man, and the parties lived a rather lavish lifestyle based upon the income generated from these business ventures.[2] They were building a $850,000 home when the petition for dissolution of marriage was filed, and the wife testified that she continued to need between $7000 and $8700 per month to meet *1189 the family's expenses commensurate with the standard of living established during the marriage.
Two circumstances complicated this financial picture even further. First, according to testimony presented by the wife, the husband began to sell the parties' various business interests in 2005. He apparently personally arranged the sales and participated in them, resulting in sale proceeds in excess of $2 million. It is unclear where this money is now. Second, the husband's father died in July 2005. The record does not contain any explanation of how his death affected the legal ownership of the corporations or any proceeds from the sale of the businesses or any explanation of whether the husband received any of the father's assets, including any interest in the corporations, as a result of the father's death.
The general magistrate was given the unenviable task of trying to interpret the various figures provided through the testimony and the parties' tax returns to fashion an appropriate award of temporary alimony, child support, and attorneys' fees. The report and recommendation issued by the general magistrate found that the wife's annual income was $40,000 and the Husband's annual income was $450,966 "based upon the funds the Husband took from various accounts and certificates of deposit." Based upon these figures, the general magistrate recommended, and the circuit court approved, an award to the wife of $10,000 per month alimony, $2,959 per month in child support, and the payment of $15,000 of the wife's temporary attorneys' fees.
Unfortunately, these figures are not supported by the evidence presented. Initially, we note that the language of the order suggests that the $450,966 figure is a lump sum the husband received from taking certain marital assets and converting them to his own use; it is not a calculation of income. We are unable to conclusively determine, however, whether the court intended a calculation of income or available assets, or upon what evidence this calculation was based. The $450,966 figure does not comport with the evidence regarding the funds the husband received from the sale of the various businesses or the testimony regarding his withdrawal of marital funds. There is also no indication that this figure relates to the historic income created by the parties' various business ventures.
Perhaps even more important, the amount awarded does not comport with the evidence of the wife's needs. The wife testified that she needed $7000 to $8700 per month to meet the family's needs; she did not differentiate in her testimony between the children's expenses and her own. The combined award here totals almost $13,000 per month and provides the wife a contribution toward her attorneys' fees. At the same time, the order recognizes that she currently earns over $3000 per month in income.
Finally, the award of temporary attorneys' fees is unaccompanied by any factual findings regarding reasonable hourly rates and the amount of fees that are expected to be reasonably incurred, and thus requires reversal. See Kasm v. Kasm, 933 So.2d 48 (Fla. 2d DCA 2006). As a result, we must reverse the amount of the individual support awards and remand for further consideration.
We are not unsympathetic to the difficulties presented to the circuit court in dissolution cases when faced with self-employed spouses and the need to enter a temporary support order expeditiously while being provided with limited information. As Judge Stringer has previously noted, "A temporary support order is often *1190 required at the beginning of the dissolution action, before the parties have had an opportunity to complete discovery. Given the urgency of some of these matters, the order is often based upon an abbreviated hearing and limited evidence." Dent v. Dent, 851 So.2d 819, 821 (Fla. 2d DCA 2003) (Stringer, J., concurring). Temporary support issues cannot always await full discovery or the preparation of an expert's opinion.
In addition, temporary support orders are, obviously, temporary. They do not create vested rights, and they can be modified or vacated at any time by the circuit court while the litigation proceeds. See § 61.14(11), Fla. Stat. (2005).[3] If further discovery reveals that a temporary support order is inequitable or based upon improper calculations, any inequity can usually be resolved in the final judgment, after a full and fair opportunity to be heard.
For these reasons, it is undoubtedly more difficult to establish an abuse of discretion or a harmful error of law in a temporary order. If the circuit court issues an order that comports with the evidence presented at the temporary hearing and provides a reasonable temporary resolution of the family's needs in light of their apparent resources, we are unlikely to find any reversible error in the temporary award. Because the specific awards in this case cannot be understood in the context of the evidence presented, however, we must reverse.
Nevertheless, we are certain that the trial court can fashion an equitable temporary support order based on the type of evidence presented in this case. Although it appears the husband has attempted to divest himself of any income, numerous options remain open to the circuit court to determine an appropriate amount of support. Income may be imputed to the husband in accordance with section 61.30(2)(b), Florida Statutes (2006). See also Smith v. Smith, 737 So.2d 641, 643 (Fla. 1st DCA 1999) (recognizing that a persons capacity to earn is a matter to be considered in calculating an appropriate award of alimony). Indeed, the Florida Supreme Court and other district courts have suggested that a presumption arises from a spouses historical earnings that supports a finding the spouse can continue to earn the same amount, absent evidence to the contrary. See Garfield v. Garfield, 58 So.2d 166, 167 (Fla.1952); Seitz v. Seitz, 471 So.2d 612 (Fla. 3d DCA 1985) (citing Klein v. Klein, 122 So.2d 205 (Fla. 3d DCA 1960)). In light of the testimony that the husband has converted a large amount of marital assets to his personal use and the evidence that he has successfully invested in businesses with more limited funds and generated significant income and profits, an award based upon historic income may be appropriate. We also note that child support specifically can be awarded from nonrecurring income or assets when the recurring income is insufficient to meet the child's needs. See § 61.30(13).
Reversed and remanded.
KELLY and WALLACE, JJ., Concur.
NOTES
[1] The order also prohibited the husband from disposing of marital assets. The husband has not challenged this portion of the order, and it is therefore affirmed.
[2] Obviously this testimony may have serious implications for the parties outside of this proceeding. As we have previously stated, "[I]t is not the job of the state court in a dissolution proceeding to fashion remedies to enforce federal tax laws when the parties submit joint federal tax returns containing misstatements. Even when the parties misrepresent their income, the court must still attempt to establish alimony based on need, ability to pay, and the relevant statutory factors." Cf. Cunningham v. Cunningham, 918 So.2d 412, 414 (Fla. 2d DCA 2006).
[3] The legislature added this provision to section 61.14 effective July 1, 2004, ch.2004-47, Laws of Fla., in direct response to cases such as this court's opinion in Kraus v. Kraus, 749 So.2d 513 (Fla. 2d DCA 1999), which suggested that temporary support orders enjoyed some level of finality even before the entry of a final judgment. See Senate Staff Analysis & Economic Impact Statement, Senate Bill 1060, Regular Session (Fla. Mar. 16, 2004). The Fifth District has recently opined that this enactment has superseded Kraus and similar cases. See Murphy v. Murphy, 948 So.2d 864 (Fla. 5th DCA 2007).