# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2025-0117

_____

TIMOTHY EHIABOR,

Appellant,

v.

ADRIANA EHIABOR,

Appellee.

_____

On appeal from the Circuit Court for Escambia County.
John L. Miller, Jr., Judge.

June 10, 2026

PER CURIAM.

In this divorce case, Appellant, Dr. Timothy Ehiabor, challenges the trial court's nonfinal order granting Appellee, Adriana Ehiabor, temporary alimony and temporary attorney's fees and costs. Dr. Ehiabor argues that the trial court did not make the required findings and did not have sufficient evidentiary support for either award. We agree with Dr. Ehiabor and therefore reverse and remand for further proceedings.

I.

The parties had a short-term marriage prior to this dissolution action, and they have one child in common. Ms. Ehiabor is a Colombian national who works part-time cleaning houses. Dr. Ehiabor is a physician working at local hospitals. Citing this difference in employment, Ms. Ehiabor moved for

temporary spousal support and attorney's fees during the pendency of the proceedings. By agreement of the parties, Dr. Ehiabor was already paying Ms. Ehiabor $3,500 per month in child support and paying her rent, as well.

The trial court held an evidentiary hearing on Ms. Ehiabor's motion at which she testified that she needed an additional $658 per month in temporary alimony to cover her new car payments. With respect to her attorney's fees, Ms. Ehiabor could not recall how much she had incurred to date. The trial court admitted her fee agreements into evidence, which showed the amounts of her initial retainer payments, and asked her attorney if she also wanted to admit any fee affidavits showing her hourly fees to date. The attorney responded, "Yes, Your Honor. That is going to be my next thing. So my fee affidavit is in Wife's Exhibit Number 12. The fees through dates [sic] are approximately a little over $30,000." The trial court then asked her attorney what was anticipated for fees to the final hearing. The attorney responded, "The anticipated fees to the final hearing are a total of $38,900," which included an estimate for a separate appeal filed by Dr. Ehiabor attempting to annul the marriage. Relevant for purposes of this appeal, however, the attorney never actually moved to admit Wife's Exhibit 12, the fee affidavit.

Following the conclusion of the hearing, the trial court awarded Ms. Ehiabor an additional $700 per month in temporary alimony and $50,000 in temporary attorney's fees. The written order included no findings of fact to support the award of temporary alimony. It merely directed Dr. Ehiabor to "pay an additional $700 per month in temporary alimony" to Ms. Ehiabor. Regarding the $50,000 attorney's fees award, the trial court offered this generic explanation:

> Based on the evidence and evaluating the established need, the court finds that the Wife has a need for an award of temporary attorney's fees and the Husband has the ability to pay for those fees and costs. The need is measured by past fees incurred and anticipated fees through the end of the case, including anticipated appellate fees due to the pending appeal. Based on the

foregoing, the Court awards $50,000 in temporary attorney's fees and costs.

Dr. Ehiabor timely appealed the order pursuant to rule 9.130, Florida Rules of Appellate Procedure, which permits an appeal of a nonfinal order granting immediate monetary relief in family law matters. Fla. R. App. P. 9.130(a)(3)(C)(iii). Dr. Ehiabor argues that the trial court abused its discretion in making both temporary awards. With respect to the temporary alimony, he faults the trial court for failing to make written findings of fact pursuant to section 61.08, Florida Statutes, regarding Ms. Ehiabor's need for temporary alimony. He also contends that there was no competent, substantial evidence to support the additional $700 per month. With respect to the temporary attorney's fees, Dr. Ehiabor argues that there was no evidence admitted to support the award, only "unsworn statements" by Ms. Ehiabor's attorney. Moreover, the trial court did not make any findings regarding reasonable hourly rates or the amount of fees that are reasonably expected to be incurred by Ms. Ehiabor.

Ms. Ehiabor responds that she sought temporary alimony pursuant to section 61.071, Florida Statutes, which does not require written findings of fact, as this Court noted in *Williams v. Williams*, 365 So. 3d 1235 (2023). She also maintains that both awards are supported by competent, substantial evidence. Specifically, she contends that the trial court did, in fact, admit the fee affidavit, even though the transcript does not reflect its admission into evidence, because the trial court expressly considered the fees incurred to that date.

II.

Because Dr. Ehiabor's argument on appeal is based, in part, on the trial court's lack of factual findings in its order, we must first determine whether Dr. Ehiabor needed to have preserved that argument prior to filing this interlocutory appeal. That is, our review of the limited record shows that Dr. Ehiabor did not bring this alleged error to the attention of the trial court prior to filing his appeal.

Generally, issues not raised in the trial court will not be considered on appeal. *Manning v. Tunnell*, 943 So. 2d 1018, 1020

3

(Fla. 1st DCA 2006); *Atwood v. Hendrix*, 439 So. 2d 973, 973 (Fla. 1st DCA 1983); *Williamson v. Williamson*, 335 So. 2d 346, 348 (Fla. 1st DCA 1976). "In order to be preserved for further review by a higher court, an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved." *Sunset Harbour Condo. Ass'n v. Robbins*, 914 So. 2d 925, 928 (Fla. 2005), *as revised on denial of reh'g* (Nov. 3, 2005) (quoting *Tillman v. State*, 471 So. 2d 32, 35 (Fla. 1985)). Furthermore, the trial court must make a ruling on the argument presented. *See Reese v. Fla. State Hosp.*, 343 So. 3d 648, 648 (Fla. 1st DCA 2022) (quoting *Sparre v. State*, 289 So. 3d 839, 849 (Fla. 2019)) ("To preserve an issue for appellate review, a litigant must present the issue to the trial court in a timely, specific manner and obtain a ruling."); *TLC Props., Inc. v. Dep't of Transp.*, 292 So. 3d 10, 18 (Fla. 1st DCA 2020) ("To be preserved for appeal, the issue or legal argument must be raised *and* ruled on by the trial court."). "The purpose of the preservation requirement is to ensure that the trial court has an opportunity to correct an error at the earliest opportunity, when the court is still in a position to recall the basis of its ruling." *Eaton v. Eaton*, 293 So. 3d 567, 568 (Fla. 1st DCA 2020).

Here, the argument raised on appeal is that the trial court failed to make required findings in its order awarding temporary alimony and attorney's fees. With respect to this alleged error in the context of a *final* order, the district courts have disagreed about whether such argument needed to be preserved through a motion for rehearing. The First, Third, and Fifth Districts concluded that a motion for rehearing was required to preserve the argument that the trial court failed to make the statutorily required findings of fact. *Owens v. Owens*, 973 So. 2d 1169, 1170 (Fla. 1st DCA 2007); *Mathieu v. Mathieu*, 877 So. 2d 740, 741 (Fla. 5th DCA 2004); *Broadfoot v. Broadfoot*, 791 So. 2d 584, 585 (Fla. 3d DCA 2001). The Second and Fourth Districts, however, concluded that a motion for rehearing was not required. *Engle v. Engle*, 277 So. 3d 697, 699 (Fla. 2d DCA 2019); *Fox v. Fox*, 262 So. 3d 789, 793 (Fla. 4th DCA 2018). Nevertheless, those two courts urged the Family Law Rules Committee to review and address the issue. *Engle*, 277 So. 3d at 704; *Fox*, 262 So. 3d at 795.

4

The Florida Supreme Court took up the issue instead, on its own motion, "to clarify that filing a motion for rehearing is required to preserve an objection to insufficient trial court findings in a final judgment order." *In re Amends. to Fla. Rule of Civ. Proc. 1.530*, 346 So. 3d 1161, 1162 (Fla. 2022). It added the following sentence to Florida Family Law Rule of Procedure 12.530: "To preserve for appeal a challenge to the sufficiency of a trial court's findings in the final judgment, a party must raise that issue in a motion for rehearing under this rule." *Id*. The Supreme Court then invited public comment. *Id*.

Following a period of public comment, the Supreme Court further amended rule 12.530 by replacing "sufficiency of a trial court's findings in the final judgment" with "failure of the trial court to make required findings of fact." *In re Amends. to Fla. Rule of Civ. Proc. 1.530 & Fla. Fam. L. Rule of Proc. 12.530*, 48 Fla. L. Weekly S69 (Fla. Apr. 27, 2023), *opinion revised and superseded,* 373 So. 3d 1115 (Fla. 2023). This change made the rule "applicable to all orders, not just final judgments," and made clear that the rule applies "only when a judge is required to make specific findings of fact and not when a party seeks to make other challenges to a trial court's order." *Id*. The amended rule took effect on April 27, 2023, and by its own terms, governed nonfinal orders like the one appealed in this case.

But that version was short-lived. On October 19, 2023, the Supreme Court further amended rule 12.530 by narrowing its scope to the "failure of the trial court to make required findings of fact *in the final judgment.*" *In re Amend. to Fla. Rule of Civ. Proc. 1.530 & Fla. Fam. L. Rule of Proc. 12.530*, 373 So. 3d 1115 (Fla. 2023) (emphasis added). Thus, appeals of final judgments require a motion for rehearing to preserve the argument, but appeals of nonfinal orders—as in this case—are no longer covered by rule 12.530's requirement to file a motion for rehearing.

This final revision to rule 12.530 makes sense, because motions for rehearing are not authorized for nonfinal orders. *Goodman v. Ningbo Litesun Elec. Co., Ltd.*, 398 So. 3d 1020, 1022 (Fla. 4th DCA 2025). Rather, a motion for reconsideration is the appropriate avenue to challenge a nonfinal order. *State v. Clark*, 373 So. 3d 1128, 1131 n.6 (Fla. 2023); *Seigler v. Bell*, 148 So. 3d

473, 478–79 (Fla. 5th DCA 2014). But, unlike a motion for rehearing, a motion for reconsideration of a nonfinal order does not toll the deadline to appeal such order. Fla. R. App. P. 9.020(h); *see also Send Enters., LLC v. Set Drive, LLC*, 390 So. 3d 48, 50 (Fla. 3d DCA 2023) (noting the "well-established Florida law that motions for rehearing of non-final orders are unauthorized and cannot toll rendition of an order"). Thus, a party must file a notice of appeal within 30 days of the rendition of an order awarding temporary alimony and attorney's fees. *See Send Enters.*, 390 So. 3d at 51 (emphasizing that "if a litigant wishes to challenge a non-final order," the litigant must file a notice of appeal "within the time limits prescribed by Florida Rule of Appellate Procedure 9.130(b)").

Because a party is expressly permitted to appeal a nonfinal order granting temporary alimony and attorney's fees, Fla. R. App. P. 9.130(a)(3)(C)(iii), and must do so within 30 days, *id.* 9.130(b), we conclude that it would be impractical to require the appellant to preserve the argument that the trial court failed to make the required findings of fact. There is simply no guarantee that a trial court will rule on any motion for reconsideration and potentially issue a revised order within those 30 days. *See Hamilton v. R.L. Best Int'l*, 996 So. 2d 233, 235 (Fla. 1st DCA 2008) ("The preservation of error requirement is not ordinarily completed until the aggrieved party has obtained a ruling on the motion or objection made in the lower tribunal."). This limited window for an appeal requires an appellant to appeal the nonfinal order awarding temporary alimony and attorney's fees even if the trial court has not acted on any motion for reconsideration. *See Gonzalez v. Axiom Contracting Grp.*, 427 So. 3d 60, 64–65 (Fla. 1st DCA 2025) (recognizing that if a motion does not toll the order's rendition, then "an appellant would have no choice but to appeal" the order that still is subject to modification or withdrawal). And once an appeal is filed, the trial court loses jurisdiction to amend the nonfinal order awarding temporary support. *Soles v. Soles*, 536 So. 2d 367, 368 (Fla. 1st DCA 1988); *see also Heritage Prop. & Cas. Ins. Co. v. Williams*, 338 So. 3d 1119, 1121–22 (Fla. 1st DCA 2022) (noting that "a trial court lacks jurisdiction to clarify or modify a non-final order while an appeal of that non-final order is pending."); Fla. R. App. P. 9.130 Comm. Notes 1977 (recognizing "the historical rule that trial courts are divested of jurisdiction only

to the extent that their actions are under review by an appellate court").

For these reasons, we conclude that there is no obligation to file a motion for reconsideration following an award of temporary alimony or attorney's fees, prior to appealing that award based on the lack of required findings of fact. Because no motion would toll the time for an appeal, an appellant does not need to preserve that particular argument for purposes of an interlocutory appeal. *Cf. Hamilton*, 996 So. 2d at 235 (relaxing the preservation requirement where no motion would toll the time for taking an appeal, but the issue to be appealed first arises in the order being appealed).

That said, we nevertheless encourage parties to immediately file motions for reconsideration in the trial court, because "bring[ing] the fact-finding defect to the trial court at the time the decision is made" allows the judge to "correct the omission while the case is fresh in his mind." *Mathieu*, 877 So. 2d at 741. Prior to an appeal, the trial court can modify a temporary support order, as such orders "do not create vested rights." *Melton v. Melton*, 420 So. 3d 1086, 1089 n.3 (Fla. 5th DCA 2025) (quoting *Ghay v. Ghay*, 954 So. 2d 1186, 1190 (Fla. 2d DCA 2007)); *see also Breton v. Raud*, 422 So. 3d 1176, 1178–79 (Fla. 3d DCA 2025) (noting how the trial court "significantly expand[ed] its findings and conclusions" following a party's motion for reconsideration of an order awarding temporary fees). If it becomes necessary, however, to file an interlocutory appeal without a ruling on the motion for reconsideration, the appellant may then request that the appellate court relinquish jurisdiction in order for the trial court to have additional time to reconsider its nonfinal order. *Send Enters.*, 390 So. 3d at 51 n.3; *Thompson v. Stewart*, 569 So. 2d 1372, 1373 (Fla. 4th DCA 1990).

Because Dr. Ehiabor was under no obligation to preserve the above argument prior to initiating this interlocutory appeal, we turn to the merits of the argument.

## III.

On the merits, Dr. Ehiabor's argument that written findings were required to support the trial court's award of temporary

7

alimony is meritorious under the current alimony statute, despite this Court's pronouncements about the prior version of that statute.

## A.

In *Williams*, this Court concluded that the absence of written findings to support an award of temporary alimony was not a basis for appellate relief. 365 So. 3d at 1238–39. This Court reasoned that the alimony provisions in section 61.08, which require factual findings, did not apply to an award of temporary alimony. Rather, temporary alimony was governed solely by section 61.071, which does not require such findings. *Id.*

But around the time we decided *Williams*, section 61.08 was amended to include temporary alimony. *See* Ch. 2023-315, § 1, Laws of Fla. (adding "temporary" to the types of alimony awardable under section 61.08). The Legislature also added language requiring "written findings of fact" to support an award of alimony. *Id.* Section 61.08 now begins,

> (1)(a)  In a proceeding for dissolution of marriage, the court may grant alimony to either party in the form or forms of temporary, bridge-the-gap, rehabilitative, or durational alimony, as is equitable. In an award of alimony, the court may order periodic or lump sum payments. The court may consider the adultery of either spouse and any resulting economic impact in determining the amount of alimony, if any, to be awarded.

> (b)  The court shall make written findings of fact regarding the basis for awarding a form or any combination of forms of alimony, including the type of alimony and the length of time for which the alimony is awarded. The court may award a combination of forms of alimony or forms of payment, including lump sum payments, to provide greater economic assistance in order to allow the obligee to achieve self-support.

§ 61.08(1), Fla. Stat. (2025).

8

The Legislature's recent inclusion of temporary alimony within section 61.08 causes us to revisit the conclusions in *Williams*. While it remains true that section 61.071 applies to temporary alimony—because temporary alimony is the same as the "alimony pendente lite" governed by section 61.071, *Ogle v. Ogle*, 334 So. 3d 699, 705 (Fla. 1st DCA 2022); *Iarussi v. Iarussi*, 353 So. 3d 75, 83–84 (Fla. 1st DCA 2022) (Long, J., concurring)— we must also account for the Legislature's deliberate addition of temporary alimony into section 61.08.

B.

"The Florida Supreme Court has repeatedly given effect to the doctrine of *in pari materia* to harmonize statutory provisions addressing related subject matter." *Beans v. Beans*, 407 So. 3d 483, 498 (Fla. 1st DCA 2024). Thus, "[w]here possible, courts must give full effect to *all* statutory provisions and construe related statutory provisions in harmony with one another." *Forsythe v. Longboat Key Beach Erosion Control Dist.*, 604 So. 2d 452, 455 (Fla. 1992). Statutes that are enacted at different times must still be construed *in pari materia. Beans*, 407 So. 3d at 498. Pursuant to this doctrine, we must attempt to harmonize section 61.071 with the revised section 61.08.

Section 61.071 allows a court to award "a reasonable sum" for temporary alimony if the petition or motion is "well founded." § 61.071, Fla. Stat. (2025). Section 61.071 does not specify what "well founded" means. However, as courts have applied it over the years, the phrase "well founded" (within the predecessor versions of section 61.071) placed an evidentiary burden on the party seeking the temporary alimony. *See, e.g.*, *Floyd v. Floyd*, 108 So. 896, 899 (Fla. 1926) (looking to the record evidence to determine whether the petition for temporary alimony was "well founded"); *Novack v. Novack*, 196 So. 2d 499, 500–01 (Fla. 3d DCA 1967) (requiring "testimony and evidence placed in the record" to support an award of temporary alimony). Consequently, at present, to support an award of temporary alimony under section 61.071, the party seeking the award must demonstrate through competent, substantial evidence (1) a need for temporary alimony and (2) the other party's ability to pay the temporary alimony. *Williams*, 365 So. 3d at 1238; *De La Piedra v. De La Piedra*, 243 So. 3d 1052, 1053

9

(Fla. 1st DCA 2018); *Ard v. Ard*, 208 So. 3d 1288 (Fla. 1st DCA 2017).

Section 61.08, as revised, now expressly includes temporary alimony in subsection (1)(a): "In a proceeding for dissolution of marriage, the court may grant alimony to either party in the form or forms of temporary, bridge-the-gap, rehabilitative, or durational alimony, as is equitable." § 61.08(1), Fla. Stat. (2025). Subsection (1)(b), which the Legislature added at the same time it added temporary alimony within subsection (1)(a), states, "The court shall make written findings of fact regarding the basis for awarding a form or any combination of forms of alimony, including the type of alimony and the length of time for which the alimony is awarded." *Id.*; Ch. 2023-315, § 1, Laws of Fla. A plain reading of these provisions within subsection (1) demonstrates that a trial court must now make written findings of fact to support an award of temporary alimony.

We believe these sections can be harmonized. Nothing in the text of section 61.071 conflicts with the new obligations imposed on a trial court by section 61.08. For instance, the obligation of written findings of fact can be harmonized with the requirement in section 61.071 that temporary alimony be "well founded." One is an obligation on the trial court to explain, in writing, its award, while the other is an obligation on a party to prove, with evidence, that an award is appropriate. Indeed, the new subsection 61.08(2)(a) aligns with how courts have historically applied the evidentiary burden in section 61.071, as subsection 61.08(2)(a) now requires a trial court to make a factual determination that the party seeking temporary alimony has demonstrated, with evidence, both a need for it and the other party's ability to pay for it. § 61.08(2), Fla. Stat. (2025). Furthermore, if the evidentiary burden has not been met, subsection 61.08(2)(b) now requires the trial court to "make written findings of fact as to the lack of need or lack of ability to pay in denying a request" for temporary alimony. *Id.* Again, this new obligation does not conflict with the text of section 61.071. We therefore conclude that both sections can be harmonized by requiring written findings of fact when a trial court determines whether or not to award temporary alimony, using the longstanding evidentiary burden of section 61.071, now codified in section 61.08(2).

10

While the Legislature's new requirement to make written findings adds to the burden on trial courts, such a requirement also "serves the laudatory goals of avoiding arbitrary outcomes and facilitating efficient appellate review." *McCarty v. McCarty*, 710 So. 2d 713, 715 (Fla. 1st DCA 1998); *see also Smith v. Smith*, 338 So. 3d 1090, 1092 (Fla. 1st DCA 2022) ("Specific factual findings by the trial court facilitate an appellate court's review."). Plus, "it is not unreasonable for divorcing spouses to be apprised, in some meaningful sense, of the trial court's thought process in an award of alimony." *McCarty*, 710 So. 2d at 715.

To be sure, the written findings required for an award of temporary alimony are not as extensive as those required for other forms of alimony. Although the new subsection 61.08(2)(b) requires a trial court to "include written findings of fact relative to the factors provided in subsection (3) supporting an award or denial" of alimony, subsection (3) only applies to awards of bridge-the-gap, rehabilitative, or durational alimony. *See* § 61.08(3), Fla. Stat. (2025) (requiring a trial court to consider the factors when determining "the proper form or forms of . . . alimony under subsections (5)–(8)," which only include bridge-the-gap, rehabilitative, and durational alimony). Besides, some of the subsection (3) factors appear to be irrelevant for purposes of temporary alimony pending a final judgment. For example, factor (3)(b) considers the "anticipated needs . . . after the entry of the final judgment." *Id.*; *see also Ogle*, 334 So. 3d at 705 (explaining that temporary alimony is only available prior to the final judgment of dissolution). For these textual reasons, an award of temporary alimony pending the final judgment need not consider the factors in subsection (3) or make written findings on them.

Section 61.08 only requires a trial court to make written findings of fact that the party seeking temporary alimony has an actual need for it, in the amount to be awarded, and that the other party has the ability to pay that amount. § 61.08(1), (2)(a), Fla. Stat. (2025). The trial court must also specify "the length of time" for which the temporary alimony is awarded, which may be until the final judgment. *Id.* Because of these new statutory requirements under section 61.08, we must distinguish *Williams* to the extent it relies on the prior version.

11

## C.

Applying the revised section 61.08 to this case, we conclude that the trial court failed to make the required written findings of fact, because the trial court made no findings of fact. It merely ordered Dr. Ehiabor to pay $700 per month in temporary alimony, in addition to the child support and housing expenses he was also paying.

Before we reverse on these grounds, we acknowledge that this Court has previously stated, albeit in dicta, that "[w]here the basis for an award is reasonably clear and supported by the record, an appellate court should not reverse for absence of statutory findings in the written order." *Buchanan v. Buchanan*, 225 So. 3d 1002, 1004 (Fla. 1st DCA 2017) (citing *Broadfoot*, 791 So. 2d at 585). But we then proceeded to hold, in that case, that the absence of statutory findings frustrated appellate review because of conflicting evidence and claims between the parties. *Id.* We remanded the case to the trial court for specific factual determinations to establish a basis for the award. *Id.*; *see also Winder v. Winder*, 152 So. 3d 836, 840 (Fla. 1st DCA 2014) (noting that a trial court's failure to make adequate factual findings is "'typically reversible error because, in most circumstances, this failure precludes meaningful appellate review'" (quoting *Winney v. Winney*, 979 So.2d 396, 400 (Fla. 1st DCA 2008))); *Fulmer v. Fulmer*, 961 So. 2d 1081, 1082 (Fla. 1st DCA 2007) ("When a trial court fails to make the statutorily required factual findings, a remand is necessary.").

Even assuming reversal is not always required, we conclude here that the absence of factual findings precludes meaningful appellate review. Ms. Ehiabor testified at the evidentiary hearing that she only sought an additional $658 per month in temporary alimony to cover her new car payments. The trial court's award of $700 per month is over and above what she asked for, and the trial court never explained the higher amount. On appeal, although Dr. Ehiabor concedes his ability to pay the higher amount, the parties continue to disagree over the actual need Ms. Ehiabor has, and we are unable to navigate the conflicting evidence to find clear support for the $700 per month award, especially in view of the child support and other ongoing support she receives from Dr. Ehiabor.

For these reasons, we remand this issue to the trial court to make written findings of fact to support, modify, vacate, or set aside the award of temporary alimony. § 61.14(11), Fla. Stat. (2025); *see also Murkerson v. Murkerson*, 325 So. 3d 1034, 1036 (Fla. 1st DCA 2021) (reversing and remanding for additional findings because we could not determine how the trial court arrived at the alimony amount).

IV.

Regarding the temporary attorney's fees awarded to Ms. Ehiabor under section 61.16, Dr. Ehiabor contends that the award is not supported by the required findings about the reasonable rate and number of hours reasonably expended. Ms. Ehiabor counters that findings are not required if the record evidence supports the award of temporary fees. These arguments warrant a discussion about what findings are required for temporary awards under section 61.16.

A.

Unlike the alimony statute, the attorney's fees statute does not expressly require any written findings. Section 61.16, Florida Statutes, states,

> The court may from time to time, after considering the financial resources of both parties, order a party to pay a reasonable amount for attorney's fees, suit money, and the cost to the other party of maintaining or defending any proceeding under this chapter, including enforcement and modification proceedings and appeals.

§ 61.16(1), Fla. Stat. (2025). Section 61.16 thus authorizes a trial court to order one party to pay another party's reasonable attorney's fees, after considering the financial resources of both parties. *Id.*; *Haslauer v. Haslauer*, 381 So. 3d 662, 665 (Fla. 1st DCA 2024). The purpose of section 61.16 is "to ensure that both parties have similar access to competent legal counsel." *Haslauer*, 381 So. 3d at 665 (quoting *Rosen v. Rosen*, 696 So. 2d 697, 699 (Fla. 1997)). "Because it provides 'access' to legal representation, section 61.16 contemplates a prospective, rather than a retrospective, fee order." *Id.* at 666.

13

But section 61.16 also "constitutes a broad grant of discretion, the operative phrase being 'from time to time.'" *Rosen*, 696 So. 2d at 700 (quoting § 61.16, Fla. Stat. (1995)). This Court has held that the phrase "time to time" makes section 61.16 "broad enough to allow the trial court to consider such a fee request at the back end of the case, if somehow the need for fees did not arise until that point in the case." *Finch v. Cribbs*, 376 So. 3d 63, 73 (Fla. 1st DCA 2021), *as clarified on denial of reh'g* (Nov. 2, 2022). Thus, awards under section 61.16 may be prospective or retrospective in nature, depending on the circumstances. *See Rosen*, 696 So. 2d at 700 ("The provision simply says that a trial court may from time to time, i.e., depending on the circumstances surrounding each particular case, award a reasonable attorney's fee after considering the financial resources of both parties."). And this Court has affirmed awards of both retrospective and prospective fees. *See, e.g.*, *O'Steen v. O'Steen*, 478 So. 2d 489, 490 (Fla. 1st DCA 1985) (retrospective); *Erskine v. Erskine*, 344 So. 3d 566, 579 (Fla. 1st DCA 2022) (prospective); *see also Lamolinara v. Lamolinara*, 85 So. 3d 1147, 1149 (Fla. 1st DCA 2012) (explaining options for retrospective awards of appellate fees); *Schwartz v. Schwartz*, 965 So. 2d 832, 833 (Fla. 1st DCA 2007) (remanding for purposes of a retrospective award). Whether prospective or retrospective, the central guidepost for all awards under section 61.16 is equity between the parties, and a trial court is given "wide leeway" to work such equity. *Rosen*, 696 So. 2d at 700.

B.

With this broad framework in mind, we turn to the required findings a trial court must make when awarding attorney's fees under section 61.16.

1.

To be sure, the primary factor a trial court must consider is the financial resources of the parties, pursuant to the plain text of section 61.16. *Rosen*, 696 So. 2d at 700; § 61.16(1), Fla. Stat. (2025). "This provision expressly requires the court to make findings regarding each party's financial needs and ability to pay." *Schwartz*, 965 So. 2d at 833; *Glasgow v. Wolfe*, 873 So. 2d 483, 484–85 (Fla. 1st DCA 2004); *see also Leon v. Velazquez*, 79 So. 3d 114 (Fla. 3d DCA 2012) (remanding for findings on need and ability to

14

pay). Given this statutory requirement based on need and ability to pay, "the appropriate inquiry and standard to be applied is the same whether the fees requested are temporary or final." *Nichols v. Nichols*, 519 So. 2d 620, 622 (Fla. 1988).

But other factors may be considered, in addition to the parties' financial resources, "to provide justice and ensure equity between the parties." *Rosen*, 696 So. 2d at 700; *Mahoney v. Mahoney*, 251 So. 3d 977, 980 (Fla. 1st DCA 2018). Such factors include "the scope and history of the litigation; the duration of the litigation; the merits of the respective positions; whether the litigation is brought or maintained primarily to harass (or whether a defense is raised mainly to frustrate or stall); and the existence and course of prior or pending litigation." *Rosen*, 696 So. 2d at 700; *see also Williams*, 365 So. 3d at 1241. "[I]n situations where a court finds that an action is frivolous or spurious or was brought primarily to harass the adverse party," a trial court has "the discretion to deny a request for attorney's fees to the party bringing the suit." *Rosen*, 696 So. 2d at 701.

2.

If the court decides to award fees based on financial and other equitable considerations, the trial court must then determine how much in fees is reasonable. § 61.16(1), Fla. Stat. (2025) (allowing an order of "a reasonable amount" of attorney's fees); *see also Williams*, 365 So. 3d at 1241 ("The trial court must also determine how much in temporary attorney's fees is reasonable to ensure the spouse's fair access to competent counsel."); *Mahoney*, 251 So. 3d at 980 ("If there is a finding of entitlement, the trial court must evaluate the reasonableness of the requested fee.").

The Florida Supreme Court has explained that the lodestar, "which is produced by multiplying the number of hours reasonably expended by a reasonable hourly rate, may be used as a starting point in determining a reasonable attorney's fee." *Rosen*, 696 So. 2d at 701. For this reason, this Court has required a trial court to make findings "as to the reasonable hourly fee for the attorney and the reasonable number of hours required to be spent" when awarding temporary attorney's fees. *Schwab v. Schwab*, 864 So. 2d 82, 84 (Fla. 1st DCA 2003); *see also Erskine*, 262 So. 3d at 225 (citing *Giovanini v. Giovanini*, 89 So. 3d 280, 282 (Fla. 1st DCA

15

2012) ("[I]n awarding attorney's fees, lower courts must make specific findings as to the hourly rate and number of hours expended."). Other district courts have required the same lodestar findings to support temporary fee awards. *See, e.g.*, *Gonzalez v. Rodriguez*, 418 So. 3d 245, 249 (Fla. 3d DCA 2025) (reversing due to the lack of findings as to the number of reasonable hours and reasonable hourly rate); *Rotunda v. Rotunda*, 259 So. 3d 216, 218 (Fla. 5th DCA 2018) (same); *Trainor v. Trainor*, 199 So. 3d 523, 524 (Fla. 4th DCA 2016) (same); *Stanton v. Stanton*, 50 So. 3d 688, 691 (Fla. 2d DCA 2010) (same). Accordingly, when awarding temporary attorney's fees, either retrospectively or prospectively, a trial court must make findings "as it relates to the amount of fees reasonably incurred or expected." *Kasm v. Lynnel*, 975 So. 2d 560, 566 (Fla. 2d DCA 2008).[1]

Although this Court has also required trial courts to analyze and make findings with respect to the reasonableness factors set forth in *Florida Patient's Compensation Fund v. Rowe*, 472 So. 2d 1145 (Fla. 1985), those findings have only been required for final orders. *See, e.g.*, *Abbott v. Abbott*, 187 So. 3d 326, 329 (Fla. 1st DCA

---

[1] For prospective awards, we acknowledge that the trial court must make an educated estimate, based on the evidence of past and anticipated legal services, regarding the amount of fees reasonably necessary going forward. In reaching this estimate, the trial court considers "the particular issues to be litigated" and "the amount necessary" to give the requesting party similar access to representation. *Robbie v. Robbie*, 591 So. 2d 1006, 1010 (Fla. 4th DCA 1991). Furthermore, because the trial court can make prospective awards "from time to time," § 61.16(1), Fla. Stat. (2025), the court has discretion to award temporary fees for each upcoming stage of litigation or through the end of the case. So long as the trial court makes findings with respect to how much of the case a prospective award covers, it can be adequately reviewed and modified in the final judgment. § 61.14(11), Fla. Stat. (2025). In other words, if the trial court overestimates or underestimates the anticipated amount of prospective fees, any award can be reduced or increased based on the proceedings that actually transpire. *Kasm*, 975 So. 2d at 564 (Fla. 2d DCA 2008); *Ghay*, 954 So. 2d at 1190.

2016); *Bradham v. Bradham*, 120 So. 3d 1274, 1276 (Fla. 1st DCA 2013); *Ingram v. Ingram*, 59 So. 3d 147, 148 (Fla. 1st DCA 2011); *Norman v. Norman*, 939 So. 2d 240, 241–42 (Fla. 1st DCA 2006); *Hosseini v. Hosseini*, 564 So. 2d 548, 551 (Fla. 1st DCA 1990). These *Rowe* factors include (1) the time and labor required, the novelty and difficulty of the issues, and the legal skill required; (2) the likelihood that the representation will preclude other employment by the lawyer; (3) the customary fee; (4) the result obtained; (5) the time limitations imposed by the client or circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation and ability of the lawyers; and (8) whether the fee is fixed or contingent. *Mahoney*, 251 So. 3d at 980; *Schwartz*, 965 So. 2d at 833; *Hamlin v. Hamlin*, 722 So. 2d 851, 852 (Fla. 1st DCA 1998).

The full *Rowe* analysis, however, is not required for temporary awards, because when "the case is just beginning or has not been tried when an interim allowance is sought, there is no way of knowing many of the *Rowe* elements, such as who is the prevailing party, how many hours were actually necessary to present the case, what are the results achieved, and so on." *Robbie v. Robbie*, 591 So. 2d 1006, 1010 (Fla. 4th DCA 1991). While a trial court has the discretion to consider any of the *Rowe* factors to ensure equity between the parties, *Rosen*, 696 So. 2d at 700–01, temporary awards are often based on limited evidence and may be modified while the litigation proceeds, *Ghay*, 954 So. 2d at 1190, therefore the full analysis under *Rowe* is not necessary. Furthermore, temporary orders are superseded by and merged into the final judgment. *Saario v. Tiller*, 333 So. 3d 315, 323–24 (Fla. 5th DCA 2022) (citing *Jackson v. Jackson*, 513 So. 2d 780, 781 (Fla. 1st DCA 1987)). To the extent a party contends a temporary award is not reasonable under the *Rowe* factors, that party may challenge the trial court's lack of *Rowe* findings following the final judgment through a motion for rehearing. Fla. Fam. L. R. P. 12.530.

3.

Overall, an award of fees under section 61.16 "must include specific findings of fact to support and explain the ruling." *Dorsey v. Dorsey*, 266 So. 3d 1282, 1289 (Fla. 1st DCA 2019) (citing *Glasgow*, 873 So. 2d at 483); *see also Watrel v. Watrel*, 331 So. 3d

17

233, 236 (Fla. 1st DCA 2021); *Fleming v. Fleming*, 279 So. 3d 763, 765 (Fla. 1st DCA 2019). Accordingly, we conclude that a trial court must make findings on the statutory factors—need, ability to pay, and reasonableness—and may make other equitable findings, to explain the temporary award it orders—prospective or retrospective, or both. *See Hosseini*, 564 So. 2d at 551 ("All factors considered in awarding fees should be specified by the court in its order.").

We acknowledge that other district courts have stated that a trial court's failure to make specific findings in a temporary fee award is not per se reversible error, so long as the record evidence sufficiently supports the amount awarded. *Kennedy v. Kennedy*, 330 So. 3d 922, 923 (Fla. 4th DCA 2021); *Piluso v. Piluso*, 622 So. 2d 117 (Fla. 4th DCA 1993); *Aziz v. Aziz*, 45 So. 3d 975, 978 (Fla. 2d DCA 2010). But even those district courts require findings when necessary to allow for meaningful appellate review. *Moore v. Kelso-Moore*, 152 So. 3d 681, 683 (Fla. 4th DCA 2014); *Ghay*, 954 So. 2d at 1190 ("Because the specific awards in this case cannot be understood in the context of the evidence presented, however, we must reverse."). Even for prospective awards, the requirement that trial courts make specific findings on the record to allow for meaningful appellate review "is certainly unchanged." *Robbie*, 591 So. 2d at 1010.

## C.

Turning to the findings in this appeal, we agree with Dr. Ehiabor that the trial court failed to sufficiently make findings under the statutory factors to support its award of $50,000. Like many temporary awards, the award here was based on both retrospective and prospective elements, that is, a combination of past fees accrued and anticipated fees needed. *See, e.g., Woodward v. Berkery*, 714 So. 2d 1027, 1030 (Fla. 4th DCA 1998) (reviewing an interim award of $71,489 for fees already incurred and $65,800 for projected fees). The trial court even stated that Ms. Ehiabor's need "is measured by past fees incurred and anticipated fees through the end of the case."

But the trial court made no findings to explain why Ms. Ehiabor had a need for temporary attorney's fees and costs, or why Dr. Ehiabor had the ability to pay such fees. With respect to past

18

fees incurred, the trial court did not make any findings as to the reasonableness of the hourly rate or the hours expended by Ms. Ehiabor's counsel. And the trial court similarly failed to explain how many hours, at what hourly rate, would be reasonable for the portion of the award it made for her anticipated fees through the end of the case. Indeed, we are left to guess how much of the $50,000 is apportioned for past fees and how much is apportioned for prospective fees. *Cf. Rotunda v. Rotunda*, 259 So. 3d 216, 218–19 (Fla. 5th DCA 2018) (finding an abuse of discretion where the trial court did not make lodestar findings or indicate whether a $50,000 temporary award was "intended to only cover fees [the] wife already incurred or her prospective fees as well," and remanding for "findings of reasonableness and an accounting of the award").

For these reasons, we reverse and remand for the trial court to make factual findings required by section 61.16, Florida Statutes, on need, ability to pay, and reasonableness. *See Gonzalez*, 418 So. 3d at 249 (reversing and remanding because the trial court failed to make factual findings as to need, ability to pay, the number of reasonable hours and the reasonable hourly rate); *Ghay*, 954 So. 2d at 1189–90 (reversing an award of temporary fees because there were no findings regarding reasonable hourly rates and the amount of fees that were expected to be reasonably incurred).

Finally, because it is not sufficiently clear how the trial court calculated the award of $50,000 based on the evidence presented, we need not reach the question of whether a trial court's failure to make findings on the statutory factors in its temporary fee award is per se reversible error or whether the evidence alone can support affirmance, as other district courts have allowed. *Kennedy*, 330 So. 3d at 923; *Aziz*, 45 So. 3d at 978. The absence of findings in this case precludes meaningful appellate review, therefore reversal is required. *Moore*, 152 So. 3d at 683; *Ghay*, 954 So. 2d at 1190.

D.

Turning to the evidence, we also agree with Dr. Ehiabor that the evidentiary record fails to support the award.

19

To receive an award of temporary attorney's fees, "[t]he party seeking fees must prove with evidence the reasonableness and the necessity of the fee sought." *Giovanini*, 89 So. 3d at 282 (quoting *Baker v. Baker*, 35 So.3d 76, 77 (Fla. 2d DCA 2010)); *see also Phillips v. Phillips*, 264 So. 3d 1129, 1132 (Fla. 2d DCA 2019) (explaining that the party requesting an award of temporary attorney's fees "*must* present evidence of the financial resources of *both* parties, . . . the need for temporary support, and the other party's ability to pay"). Although a temporary fee award is within the broad discretion of the trial court, the record must contain competent, substantial evidence to support the award. *Erskine*, 262 So. 3d at 225. Thus, "an award that makes the proper findings based upon competent, substantial evidence is not easily reversed." *Kasm*, 975 So. 2d at 566.

Here, even though the trial court offered no explanation, the evidence supported the trial court's general conclusion that Ms. Ehiabor had a need for attorney's fees. She testified that she carried $33,024 in credit card debt, and part of that credit card debt was accrued to pay for her attorney.[2] She also testified that

---

[2] We decline to follow any dicta or commentary from this Court that suggests a party's access to a loan or credit, for purposes of advancing fees, demonstrates that the party has no need for an award in the amount of that loan or credit. *See Jessup v. Werner*, 354 So. 3d 605, 609 (Fla. 1st DCA 2022) (advising that a loan from a parent should be considered a "financial resource" when determining a party's need for fees, despite concluding that the issue of fees was not adjudicated sufficiently by the trial court to provide authority for appellate review); *see also Haslauer*, 381 So. 3d at 672 (Tanenbaum, J., concurring) (arguing that a party's decision to finance the lawyer's fees by credit card and incur debt obviated the need for an award of fees under section 61.16). First, a loan is not an asset; it is a liability. Second, this position undermines the Florida Supreme Court's admonishment that an "impecunious spouse" should not be disadvantaged by retaining an attorney and then seeking fees as a necessary reimbursement. *Nichols*, 519 So. 2d at 621–22 (holding that a party's initial payment for representation does not refute his or her need for attorney's fees). Further, this Court has previously explained that advanced payments of fees by family members would not reduce a

20

she had a monthly deficit and an overall negative net worth. When asked if she had money to pay her attorney's initial retainer fees of $5,000 and $7,500, for the pending dissolution action and related appeal, respectively, Ms. Ehiabor said she did not have the money. This testimony was sufficient to support her need for temporary fees.

With respect to Dr. Ehiabor's ability to pay, the evidence included his testimony regarding his bank account balances of $396,212 and $28,557, and his stock portfolio balances of $484,539 and $243,660. This evidence easily supported the trial court's general conclusion that Dr. Ehiabor had the ability to pay for Ms. Ehiabor's attorney's fees. Indeed, Dr. Ehiabor does not contest his ability to pay in this appeal.

But with respect to the reasonableness of the $50,000 award, the record evidence is lacking. The deficiency appears to stem from an honest oversight. Ms. Ehiabor's counsel prepared an affidavit that demonstrated the time her firm had expended on the case to date and the time she anticipated would be necessary until the final judgment, with associated rates. It was marked Wife's Exhibit 12, and it showed $30,394 of incurred fees and $38,900 of anticipated fees. At the hearing, Ms. Ehiabor's counsel clearly expressed her intention to move to admit the fee affidavit by stating, "That is going to be my next thing." But the trial court then engaged in a short colloquy with counsel about her affidavit and anticipated fees, and counsel never actually moved to admit the affidavit into evidence before her hearing time expired. As a result, the hearing transcript does not reflect the affidavit's admission into evidence. There was no ore tenus motion and no opportunity for opposing counsel to object, as there was with every other document admitted into evidence at the hearing.

Without the fee affidavit in the record evidence, there was no evidence upon which the trial court could determine a reasonable

party's need unless there is "no obligation to repay" (thus making it a gift). *Sarazin v. Sarazin*, 263 So. 3d 273, 276 (Fla. 1st DCA 2019); *see also Gonzalez*, 418 So. 3d at 249 (gifts may be considered a financial resource). As we see it, practically and legally, a loan does not reduce a party's need.

21

fee award based on the hours expended or anticipated by counsel and the hourly rate attached to those hours. Even though counsel answered the trial court's questions about the fee affidavit, "unsworn representations by counsel about factual matters do not have any evidentiary weight in the absence of a stipulation." *Aziz*, 45 So. 3d at 978 (quoting *Daughtrey v. Daughtrey,* 944 So. 2d 1145, 1148 (Fla. 2d DCA 2006)).

This case is similar to *Williams*, where we vacated an award of fees because the affidavit from the movant's counsel was filed with the court but not admitted into evidence. 365 So. 3d at 1241. Thus, the affidavit was not evidence on which the trial court could rely. *Id.* at 1242. It did not matter that the movant's counsel even indicated, in court, that she intended to present her affidavit of attorney's fees as evidence. *Id.* at 1241.

Accordingly, in addition to the conclusions above regarding the lack of factual findings, we also reverse and remand based on the lack of evidentiary support for the temporary award of attorney's fees. *See Cherry v. Viker*, 197 So. 3d 1292 (Fla. 1st DCA 2016) (reversing an award of temporary fees and remanding for a new hearing because "only argument of counsel—and no evidence—was presented at the hearing" regarding the parties' resources). Dr. Ehiabor suggests that the trial court, on remand, could "take further evidence" with respect to temporary attorney's fees and costs. We agree.

### V.

For the reasons above, we reverse the trial court's awards of temporary alimony and temporary attorney's fees and costs, and we remand for further proceedings and findings consistent with this opinion.

REVERSED and REMANDED.

LEWIS, KELSEY, and TREADWELL, JJ., concur.

22

_____

***Not final until disposition of any timely and
authorized motion under Fla. R. App. P. 9.330 or
9.331.***

_____


Jerry L. Rumph, Jr., Brooks Law, Tallahassee, for Appellant.

Therese F. McKenzie, McKenzie Law Firm, P.A., Pensacola, for
Appellee.